# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-00088-COA

**CURTIS DAVIS, JR.** APPELLANT

v.

**STATE OF MISSISSIPPI** APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2012 |
| TRIAL JUDGE: | HON. C.E. MORGAN III |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CURTIS DAVIS JR. (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 04/28/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.    Curtis Davis Jr. appeals the denial of his second post-conviction-relief (PCR) motion, seeking relief based on newly discovered DNA evidence. We agree with the trial court's finding that Davis's motion is barred as a successive writ and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Davis was indicted for the capital murder of his father-in-law, William McCuiston, and for possession of a firearm by a convicted felon. On August 31, 2010, Davis pled guilty to manslaughter and possession of a firearm by a convicted felon. He was sentenced to

twenty years and ten years, respectively, with the sentences to run consecutively.

¶3.    On May 24, 2011, Davis's counsel filed a PCR motion in the Montgomery County Circuit Court, asserting that Davis's conviction and sentences should be vacated based on newly discovered DNA evidence. The DNA evidence was retrieved from swabs taken from a gun, phone, shoe, and various other objects found at the crime scene. The test results excluded Davis as a contributor to the samples. Davis argued he would have chosen to go to trial based on the lack of DNA evidence had he known the results prior to his plea, since the State had no other evidence linking him to the crime. He also argued his cousin, Betty Young, committed the murder, as evidenced by her knowledge of the gun's location after the murder and her financial motive.

¶4.    The trial court denied the motion, finding Davis's arguments either had been waived or were without merit. First, the trial court noted that on August 5, 2010, prior to his plea, Davis had moved to compel the DNA test results. His motion argued that the State had violated discovery rules by failing to provide him with the results.[1] Crime lab records show the results became available on August 27, 2010, four days before Davis entered his plea. The trial court found that because the results were available prior to his plea, they were not newly discovered evidence. The trial court further found there was no evidence the State suppressed the test results, and all arguments contained in the motion to compel were waived by Davis's plea. As the trial court found, when Davis pled guilty, "he waived his positions

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

raised in his [m]otions to [s]uppress [his confession] and [c]ompel" the DNA results. The trial court likewise found Davis's "allegations against Betty Young do not constitute newly discovered evidence and were waived by the pleas."

¶5. Notwithstanding, the trial court examined the DNA test results and found no merit to Davis's claim that the results would have materially affected his plea. The swabs taken from the phone revealed the victim's DNA, which the trial court noted was "not unusual considering the homicide took place in [the victim's] home." The other swabs produced no DNA results. The DNA results did not exclude Davis as the perpetrator. They only excluded him as a contributor to the samples. The trial court found that the absence of DNA evidence did not exonerate Davis, and that while "there is no forensic evidence linking [Davis] with the crime, there are his confession and statements in the plea colloquy that do." Davis's PCR motion was denied on June 8, 2011. No appeal was taken of the trial court's decision.

¶6. On October 10, 2012, Davis filed a pro se petition entitled "Writ of Mandamus," which the trial court treated as a PCR motion. Davis again argued he was entitled to relief based on his discovery of the DNA test results after his plea. He argued the DNA test results were newly discovered evidence, his counsel was ineffective for failing to advise him that he could wait on the DNA test results before pleading guilty, and his confession was coerced. On October 19, 2012, the trial court denied the motion as successive-writ barred. Davis filed a motion to reconsider, which was also denied.

¶7. Davis appeals, raising the following issues: (1) the trial court erred in denying his PCR motion when there was newly discovered exculpatory evidence; (2) the trial court erred

in finding his PCR motion successive-writ barred; (3) his attorney was ineffective for failing to advise him of his right to wait on the DNA results; and (4) his due-process rights were violated because the State failed to disclose the DNA test results. We find no error and affirm.

## STANDARD OF REVIEW

¶8. The decision to deny a PCR motion will not be disturbed unless clearly erroneous. *Rowland v. State*, 42 So. 3d 503, 506 (¶8) (Miss. 2010). Questions of law are reviewed de novo. *Id.*

## ANALYSIS

¶9. Davis's second PCR motion was summarily denied as a successive writ. Mississippi Code Annotated section 99-39-23(6) (Supp. 2014) provides that an order dismissing or denying a PCR motion acts as a bar to a successive PCR motion. Several exceptions exist to the successive-writ bar, including claims of newly discovered evidence under section 99-39-23(6) and "errors affecting fundamental constitutional rights[.]" *Smith v. State*, 149 So. 3d 1027, 1031-32 (¶¶8-11) (Miss. 2014) (quoting *Rowland*, 42 So. 3d at 507 (¶12)) (holding that constitutional claims are excepted from the successive-writ bar and the common-law doctrine of res judicata). It is undisputed that Davis's second PCR was a successive writ. Thus, we must determine whether Davis has shown any exceptions to the procedural bar.

### 1. Newly Discovered Evidence

¶10. Davis first argues he is entitled to relief based on the newly discovered DNA evidence. Davis argues he learned of the DNA test results after his plea, and the results

4

would have changed the outcome of his conviction. He asserts he would not have pled guilty had he known the results excluded him as a contributor to swab samples taken from the crime scene, since the State had no other evidence against him.

¶11.    Newly discovered evidence is "evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence." Miss. Code Ann. § 99-39-23(6).[2]  In order to provide an exception to the procedural bar, "[t]he evidence must be both newly discovered and material to the outcome of [the defendant's] convictions." *McCoy v. State*, 111 So. 3d 673, 676 (¶8) (Miss. Ct. App. 2012). However, "when a defendant pleads guilty, he is admitting that he committed the offense. Therefore, by definition, a plea of guilty negates any notion that there is some undiscovered evidence which could prove his innocence." *Bell v. State*, 2 So. 3d 747, 750 (¶10) (Miss. Ct. App. 2009) (quoting *Jenkins v. State*, 986 So. 2d 1031, 1034 (¶12) (Miss. Ct. App. 2008)).

¶12.    As the trial court found when it denied Davis's first PCR motion, the DNA results do not qualify as newly discovered evidence, and they are not material to the outcome of Davis's conviction. The DNA test results were available four days prior to Davis's plea. Davis has not shown that the results were not available to him, or that the State suppressed the results.

_____

[2] In his brief, Davis asserts he is entitled to relief under Mississippi Code Annotated section 99-39-5(2)(a)(i)-(ii) (Supp. 2014). Subsection (i) provides an exception to the three-year time-bar applied to PCR motions for claims of newly discovered evidence. Subsection (ii) provides an exception to the time-bar where the results of new or additional DNA testing would have favorably affected the defendant's conviction or sentence had the results been available at the time. Neither applies here. Davis's motion was not time-barred, and he does not assert a need for new or additional DNA testing. We will examine Davis's argument under the exception set out in section 99-39-23(6).

Further, the results do not provide exculpatory information. Davis argues the test results are exculpatory because, without any DNA evidence, the State had no proof that he committed the murder. However, this is not true.

¶13.    Regardless of the absence of DNA evidence, the State had evidence of Davis's guilt because Davis confessed to law enforcement that he killed McCuiston. His confession to Montgomery County Sheriff Jerry Nix is as follows:

> Sheriff Nix:  Okay, when you went inside. Where did you go to?
>
> Davis:          Uh, he keep his weapon in his closet. I went back there and got it.
>
> Sheriff Nix:  Okay.
>
> Davis:          'Cause I knew– I knew he just whatn't gone [sic] let me talk to him.
>
> Sheriff Nix:  Okay.
>
> Davis:          Uh, when he came in, I went in the corner. I knew he was gone go [sic] get it.
>
> Sheriff Nix:  Okay.
>
> Davis:          Uh, I put it down. He always have been a hot head. When he saw it.
>
> Sheriff Nix:  So when –
>
> Davis:          When – when he tried to grab it, I went at it, and I got him first.
>
> Sheriff Nix:  You went ahead and had the gun, so you said.
>
> Davis:          Yes, sir. I had–
>
> Sheriff Nix:  You had it in the kitchen. When he come in the door, what happened?

6

Davis:          Uh, that's as far as he went.  He couldn't go – I think when he saw me, I kind of scared him.

Sheriff Nix:   And then what'd you do?

Davis:          I shot him.

Sheriff Nix:   That's when you shot him – when he come in the door – come to the kitchen there.

Davis:          Yes, sir.

Sheriff Nix:   How many times did you shoot him?

Davis:          Twice.

Sheriff Nix:   Okay.  Was he trying to get away from you when you shot him, or was he standing there looking at you, or –

Davis:          He was looking at me.  I think I initially scared him.  He wasn't expecting it.  Maybe find his wife at the door.  Uh, but I shot him.  When I shot him twice, he fell facing the uh – [h]e fell in – I call it the living room.

¶14.  Further, by pleading guilty, Davis nullified any assertion that he could somehow later prove his innocence through undiscovered evidence. *See Bell*, 2 So. 3d at 750 (¶12).  During his plea colloquy, the State provided a factual basis for his guilt, which Davis admitted was true.  His plea colloquy reads as follows:

BY THE COURT:   I will hear from the State on the factual basis of each charge.

[STATE]:         . . . [T]he State would show in a trial of this matter as to Count One, the Defendant is pleading to the lesser included of manslaughter.  The State would show that this Defendant did kill a human being, that being Mr. William McCuiston without malice and in the heat of passion by the use of a dangerous weapon, that being a .30-30 rifle.  As to Count Two, the State would show –

both of these took place on December 1st, 2009, Your Honor. Show that this Defendant did possess a .30-30 Marlin rifle after he had been convicted of statutory rape in Oktibbeha County in 2008, where he received a 20 year suspended sentences. . . . [Davis] confessed to the killing in that he shot him at his home, and this was tape recorded after giving a Mirandized statement.

BY THE COURT: You have heard what the State intends to prove in the event this matter would go to court. Did you do those thing?

[DAVIS]: Yes, Your Honor.

BY THE COURT: Are you pleading guilty to each charge because you are, in fact, guilty of them?

[DAVIS]: Yes, Your Honor.

Davis also admitted under oath during his plea colloquy that his plea was voluntary and of his own free will. We give "a strong presumption of validity" to statements made under oath. *Loden v. State*, 43 So. 3d 365, 396 (¶57) (Miss. 2010).

¶15. Davis has not shown a claim of newly discovered evidence such that he can overcome the successive-writ procedural bar. The DNA evidence was not newly discovered or material to Davis's plea, and, regardless, Davis negated any claims of innocence when he entered his plea. This issue is without merit.

**2. Ineffective Assistance of Counsel**

¶16. Davis argues his counsel was ineffective by failing to advise him that he could wait for the DNA test results before pleading guilty. He also asserts that his counsel coerced him into pleading guilty, telling him that if he did not plead, he could be sentenced to death or life without parole.

8

¶17. To prevail on a claim of ineffective assistance of counsel, a petitioner must show: (1) his counsel's performance was deficient, and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order for his claim to be excepted from the successive-writ bar, Davis must show his counsel committed an error affecting his fundamental constitutional rights. *See Smith*, 149 So. 3d at 1031-32 (¶10). "It is conceivable that under the facts of a particular case, [an appellate court] might find that a lawyer's performance was so deficient, and so prejudicial to the defendant, that the defendant's fundamental constitutional rights were violated." *Bevill v. State*, 669 So. 2d 14, 17 (Miss. 1996). "However, . . . merely raising a claim of ineffective assistance of counsel is [in]sufficient to surmount the procedural bar." *Id.*

¶18. Davis's argument that his counsel coerced him into pleading guilty without waiting on the DNA test results is without merit. Davis was indicted for capital murder and possession of a weapon by a felon. On August 23, 2010, Davis was offered a staggered plea bargain. It stated that Davis could plead guilty to the lesser charge of manslaughter and possession of a firearm by a felon, if he entered his plea prior to the hearing on his motion to suppress his confession, which was scheduled for August 31, 2010. If he accepted the plea prior to the hearing, he would be sentenced to a total of thirty years. However, if the plea was not accepted before the hearing, the State would pursue a life sentence without the possibility of parole. Davis chose to plead and accept the lesser sentence, and he has sworn his plea was voluntary.

¶19. Davis has provided no evidence his attorney gave him erroneous advice. Mere

assertions in a PCR petitioner's brief are insufficient to support a claim of ineffective assistance of counsel. *Clark v. State*, 54 So. 3d 304, 308 (¶13) (Miss. Ct. App. 2011) (citing *Vielee v. State*, 653 So. 2d 920, 922 (Miss. 1995)). Davis's unsupported claims are insufficient to prove his counsel was ineffective.

¶20. Davis has not shown ineffectiveness on behalf of his counsel and has not overcome the procedural bar. This issue is without merit.

### 3. *Brady* Violation

¶21. Lastly, Davis argues the State illegally suppressed the DNA test results, which were favorable to his defense.

¶22. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, the defendant must show: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521 (2011) (citation and internal quotation marks omitted).

¶23. On August 5, 2010, Davis moved to compel the DNA test results. Crime lab records show the DNA results became available on August 27, 2010, four days prior to Davis's plea. There is no evidence that the test results were not available to Davis, or that the State suppressed the test results. And even if there was, Davis has failed to show the evidence

"was favorable to his defense or that the outcome of the proceedings would have been different had he been shown the . . . evidence." *Rustin v. State*, 138 So. 3d 270, 274 (¶12) (Miss. Ct. App. 2014). The DNA test results only excluded Davis as a contributor to the samples taken and were not exculpatory. Further, as the trial court found, when Davis entered his plea, he waived the arguments in his motion to compel the test results.

¶24. Davis has not shown a *Brady* violation, and he has not overcome the successive-writ procedural bar. This issue is without merit.

¶25. **THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**