# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-01072-COA

**PHILLIP FREDENBURG A/K/A PHILLIP C. FREDENBURG**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | PHILLIP FREDENBURG (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POSTCONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/25/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     On August 11, 2008, Phillip Fredenburg pleaded guilty to armed robbery. The trial court sentenced him to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended. On June 11, 2015, Fredenburg filed a motion for postconviction relief (PCR), claiming: (1) his plea was involuntarily and unknowingly entered; (2) ineffective assistance of counsel; and (3) a *Brady*[1] violation. The

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

trial court summarily denied Fredenburg's motion. Fredenburg now appeals. Finding no error, we affirm.

**FACTS**

¶2. On October 3, 2007, Elsie Echols reported an armed robbery outside of the Star Food Market on Bailey Avenue in Jackson, Mississippi. Echols alerted the police and provided a description of the three men who held her up at gunpoint and stole her purse. Officers with the Jackson Police Department (JPD) then spotted two men matching Echols's description. JPD officers eventually apprehended the two men, Fredenburg and Cage Wright, and took them into custody. Fredenburg declined to give a statement, but Wright provided the police with a statement implicating Fredenburg in the robbery. Wright also told police that he did not know that Fredenburg was planning to commit an armed robbery.

¶3. Echols later identified Fredenburg and Wright from a photo lineup as two of the three men who robbed her. Echols specifically identified Fredenburg as the male who held the gun and grabbed her purse.

¶4. At his August 11, 2008 plea hearing, Fredenburg affirmed under oath that his defense counsel had explained to him all of the facts and circumstances of the offense charged and discussed any potential defenses. Fredenburg also swore that he had read and understood his plea petition. The transcript of the plea hearing reflects that the State recited into the record the underlying facts it would prove to support an armed-robbery conviction in the event Fredenburg elected to proceed to trial. Fredenburg testified that he did not disagree with the State's factual basis. At the plea hearing, Fredenburg also denied being on any medication

2

or having any mental illness that would impair his ability to plead guilty.

¶5. The trial court accepted Fredenburg's guilty plea and advised Fredenburg of the minimum and maximum sentences for armed robbery. The trial court also advised Fredenburg of the rights he would waive by entering a guilty plea. The trial court then determined that Fredenburg entered his plea freely, intelligently, and voluntarily, and sentenced Fredenburg to serve twenty years in the custody of the MDOC, with five years suspended.

¶6. On June 11, 2015, nearly seven years after pleading guilty to armed robbery, Fredenburg filed a PCR motion in the trial court. The trial court summarily denied the PCR motion on June 22, 2015. Fredenburg now appeals.

## STANDARD OF REVIEW

¶7. "We review a circuit court's denial of a PCR motion under a clearly-erroneous standard of review." *Vanwey v. State*, 147 So. 3d 367, 369 (¶8) (Miss. Ct. App. 2014) (citing *McLaurin v. State*, 114 So. 3d 811, 813 (¶4) (Miss. Ct. App. 2013)).

## DISCUSSION

¶8. Fredenburg acknowledges that he filed his PCR motion outside of the three-year statute of limitations. However, to explain his delay, Fredenburg claims that he only recently became stabilized on his medication, and he maintains that this resulted in the delay in perfecting his appeal.

¶9. Fredenburg also raises other claims in support of his PCR motion. Fredenburg claims that he only pleaded guilty because he was threatened by his co-indictees, Cage Wright and

3

Eric James. Fredenburg further alleges that his constitutional rights were violated when he learned after pleading guilty that his co-indictees entered pleas to lesser charges "only minutes" after Fredenburg entered his plea. Fredenburg states that prior to entering his guilty plea, he was entitled to know of any leniency agreement entered into by his co-indictees. He also claims that if the trial court would have required the State to establish a factual basis for his plea, the trial court would have determined that Fredenburg did not commit the crime of armed robbery. Finally, Fredenburg argues that he was denied effective assistance of counsel, in violation of his constitutional rights.

¶10. In applying the applicable law to this case, we find Fredenburg's claims barred by the three-year statute of limitations of the Mississippi Uniform Postconviction Collateral Relief Act (UPCCRA). The record reflects that Fredenburg pleaded guilty to armed robbery on August 11, 2008, yet failed to file a PCR motion until June 11, 2015. Mississippi Code Annotated section 99-39-5(2) (Rev. 2015) provides that in the case of guilty plea, "[a] motion for relief under this article shall be made . . . within three (3) years after entry of the judgment of conviction." We acknowledge that the UPCCRA has provided certain exceptions from this three-year statute of limitations in cases where the petitioner can demonstrate the following:

> (a)(i) That there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence; or
>
> (ii) That, even if the petitioner pled guilty or nolo contendere, or confessed

4

or admitted to a crime, there exists biological evidence not tested, or, if previously tested, that can be subjected to additional DNA testing that would provide a reasonable likelihood of more probative results, and that testing would demonstrate by reasonable probability that the petitioner would not have been convicted or would have received a lesser sentence if favorable results had been obtained through such forensic DNA testing at the time of the original prosecution.

(b) Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked. Likewise excepted are filings for post-conviction relief in capital cases which shall be made within one (1) year after conviction.

Miss. Code Ann. § 99-39-5(2). We further acknowledge errors affecting a defendant's fundamental constitutional rights are also exceptions to this time-bar. *Blount v. State*, 126 So. 3d 927, 931 (¶13) (Miss. Ct. App. 2013).

¶11. In evaluating the application of the statute of limitations to this case, we note that the record reflects that the trial court entered its judgment of conviction in 2008, and Fredenburg failed to file his PCR motion until 2015. As a result, Fredenburg's PCR motion is clearly untimely. However, Fredenburg asserts that his counsel's assistance was ineffective and violated his fundamental constitutional rights. Fredenburg claims that based on this assertion, his motion is thus excepted from the three-year statute of limitations under the UPCCRA.

¶12. We recognize that the Mississippi Supreme Court has held that claims of ineffective assistance of counsel are subject to the procedural bars of the UPCCRA. *Salter v. State*, 64 So. 3d 514, 518 (¶14) (Miss. Ct. App. 2010) (citing *Kirk v. State*, 798 So. 2d 345, 346 (¶6) (Miss. 2000)). Jurisprudence reflects that "merely raising the claim of ineffective assistance of counsel is insufficient to surmount the procedural bar[.]" *Thomas v. State*, 933 So. 2d 995,

5

997 (¶5) (Miss. Ct. App. 2006). Accordingly, this Court must review Fredenburg's ineffective-assistance-of-counsel claim to determine whether it is sufficient to invoke the fundamental-rights exception. We recognize that "[t]he burden is on the PCR movant to show he . . . is entitled to relief by a preponderance of the evidence." *Smith v. State*, 129 So. 3d 243, 245 (¶5) (Miss. Ct. App. 2013).

¶13. The supreme court has explained that in order to prevail on a claim of ineffective assistance of counsel, a petitioner "must demonstrate two things: (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different." *Avery v. State*, 179 So. 3d 1182, 1188 (¶13) (Miss. Ct. App. 2015) (internal quotation marks omitted) (citing *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006)); *see Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

¶14. In *Avery*, 179 So. 3d at 1188 (¶13), this Court recognized that with regard to guilty pleas, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty, would have insisted on going to trial, and the outcome would have been different." We further acknowledged that "a defendant must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own." *Id*. at 1188-89 (¶13). "When a movant fails to attach any supporting affidavits and relies solely on his own sworn motion, his ineffective-assistance claim must fail." *Id*. at 189 (¶13).

¶15. In support of his claim of ineffective assistance, Fredenburg claims that his attorney

should have used Fredenburg's alleged mental illness as a defense for the charges against him. Fredenburg asserts that he informed his counsel of his history of mental illness. Fredenburg suggests that a psychiatric assessment would have shed light on his "capacity to appreciate the criminality" of his conduct as well as his competency to enter a guilty plea. Fredenburg further claims that his counsel also filled out his plea petition for him and asserted "complete falsities."

¶16. Fredenburg also argues that his counsel failed to interview various witnesses who could have corroborated Fredenburg's story that he was framed. Fredenburg claims that his defense counsel could have interviewed the employees and customers at the supermarket at the time of the robbery, claiming that "their testimony could have been highly probative of my innocence." In his brief, Fredenburg also mentions a man named "Frank," whom he alleges his co-indictee, Eric James, mentioned in his statement to the police. Fredenburg alleges that Frank told James's sister that he observed police "beating up" on a white boy who Frank thought was James. Fredenburg claims that "Frank witnessed me getting beat up by the police. [Frank's] testimony would have been very persuasive evidence of me being framed for the armed robbery."

¶17. After our review of the record, we find that Fredenburg's claims lack sufficient evidentiary support. Fredenburg provides only his own assertions to support his claims. Moreover, the record reflects that Fredenburg submitted his plea to the trial court under oath wherein he acknowledged that he understood the meaning and effect of his guilty plea, as well as the offenses to which he pleaded guilty. Fredenburg also stated under oath that he

7

was satisfied with his defense counsel's service. Thus, Fredenburg has not sufficiently alleged that his counsel's performance fell below an objective standard of reasonableness. Accordingly, Fredenburg failed to prove the first part of the *Strickland* analysis.

¶18. Additionally, the record reflects that at his plea hearing, Fredenburg swore under oath that his defense counsel had advised him of the nature of the offense and discussed possible defenses. The record also shows that Fredenburg failed to provide any other information about Frank, including how to contact him. We find that Fredenburg failed to demonstrate a reasonable probability that the outcome of the proceeding would have been different if his defense counsel had interviewed Frank or the employees and customers at the supermarket. *See Avery*, 179 So. 3d at 1188 (¶13).

¶19. Regarding Fredenburg's claim of mental incapacity that impaired his ability to make a knowing, voluntary, and intelligent plea, we recognize that "it is the petitioner, not the State, who bears the burden of proving by a preponderance of evidence that the guilty plea was involuntary." *Timmons v. State*, 176 So. 3d 168, 171-72 (¶9) (Miss. Ct. App. 2015). Despite Fredenburg's claim to the contrary, the record reflects that the trial court found that the guilty-plea colloquy herein reflects that Fredenburg's guilty plea was knowing, intelligent, and voluntary. No lack-of-competency issues arose before the trial court upon accepting Fredenburg's plea, and Fredenburg has failed to provide evidence to support a showing of any subsequent onset of mental incapacity upon submission of his PCR motion herein. The trial court's order denying Fredenburg's PCR motion reflects that the trial court reviewed the guilty-plea transcript, which shows that Fredenburg denied under oath being

on any medications or having mental illness that would impair his ability to enter his guilty plea.

¶20. The trial court also found that the medical records submitted by Fredenburg with his PCR motion were inapplicable and insufficient to support his claim for relief. The record shows that, in support of his claim that his plea was involuntary and unknowing, Fredenburg submitted medical records showing his prior diagnosis for attention deficit hyperactivity disorder (ADHD) and conduct disorder. In its order denying PCR, the trial court stated that none of the medical records provided by Fredenburg indicated that he did not understand right from wrong or lacked competency to enter a guilty plea. Specifically, the trial court recognized that

> [Fredenburg] states, and medical records confirm, he suffered from ADHD and conduct disorder with "sociopathic and psychopathic personality traits." Different records describe him as antisocial with impulse control issues. **However, the last medical records provided were in 2005, two years prior to the crime. Further, no medical records indicate [Fredenburg] did not understand right from wrong or would be impaired to enter a guilty plea.** He states he was in "delusional states of mind" when he met with his attorney; however, his attorney's notes, which he attached to his petition, do not indicate this and **no medical records from 2008 have been submitted**. His attorney did note he was prescribed Ritalin.

(Emphasis added). The trial court also found that Fredenburg "failed to attach an affidavit from his former attorney or from anyone else that could verify his illness at the time of the crime and plea." The trial court observed that the attorney's notes reflected that Fredenburg confessed to his attorney.

¶21. Fredenburg also alleges that his constitutional rights were violated when he learned after pleading guilty that his co-indictees entered pleas to lesser charges "only minutes" after

9

Fredenburg entered his plea. Fredenburg states that he was entitled to know of any leniency agreement entered into by his co-indictees. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In order to establish a *Brady* violation, Fredenburg must show: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued." *Davis v. State*, 174 So. 3d 299, 306 (¶22) (Miss. Ct. App. 2015) (citing *Skinner v. Switzer*, 562 U.S. 521 (2011)). We find, however, that Fredenburg's guilty plea precludes him from now asserting a *Brady* violation. *See United States v. Ruiz*, 536 U.S. 622, 628 (2002); *United States v. Conroy*, 567 F.3d 174, 178 (5th Cir. 2009); *Matthew v. Johnson*, 201 F.3d 353, 362-64 (5th Cir. 2000); *Walton v. State*, 165 So. 3d 516, 524-25 (¶¶30-33) (Miss. Ct. App. 2015). *See also* URCCC 8.04.[2] Furthermore, Fredenburg

---

[2] Uniform Rule of Circuit and County Court 8.04(A)(4)(c) provides in pertinent part:

When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:

. . . .

c. That the accused understands that by pleading guilty (s)he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to

provided no evidence in the record regarding any leniency agreement between the State and his co-indictees. We find that Fredenburg "failed to show the evidence was favorable to his defense or that the outcome of the proceedings would have been different had he been shown the evidence." *Davis*, 174 So. 3d at 306 (¶23).

¶22. We find no abuse of discretion in the trial court's denial of Fredenburg's PCR motion. The record reflects that Fredenburg's claims are time-barred pursuant to section 99-39-5(2). Based on our review of the record, we find no error in the trial court's finding that Fredenburg failed to present sufficient evidence in support of his claims to overcome the procedural bar. We therefore affirm.

¶23. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**

---

represent him/her if (s)he is indigent.

11