# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-01652-COA

**CHARLES NANCE**                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2018 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES NANCE (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 06/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.　Facing trial as a habitual offender on three felony charges for the sale of methamphetamine, a defendant plead guilty. A year later, he sought to undo his guilty plea. We affirm the trial court's denial of relief.

## BACKGROUND AND PROCEDURAL HISTORY

¶2.　Charles Nance was indicted in 2014 for four counts of selling methamphetamine to "an undercover individual." In 2016, he was subsequently indicted for four more counts, this time for the sale of methamphetamine, the sale of cocaine, possessing a rifle despite being a felon, plus having a handful of Adderall.

¶3.　So by the time Nance was going to trial for the 2014 counts, he had eight separate

felony charges hanging over his head. On the day of trial, the State informed the trial court it was proceeding on just two of the four counts of selling methamphetamine.

¶4. At the outset of what would become a guilty plea hearing, because there had been a dispute between the two, Mr. Nance affirmed to the trial court he wanted his attorney to continue representation. When asked, "[Y]ou want him to represent you?" Nance replied, "Yes, sir."

¶5. The trial court then informed Nance of the risks of conviction. "You understand, if you get convicted on these charges, I have to give you 8 years in prison without parole on each, you understand that, right?" The defendant replied, "Yes, sir." The State interjected that, because the defendant was indicted as a habitual, the risks would actually "be enhanced to double those if he is convicted." The trial court told Nance that "if you get convicted, the State is moving to have you sentenced to 16 years without parole on each count."

¶6. During this sequence, the trial court also asked Nance why he had missed court the day before. Nance replied that he had gone to pick up his medicine from his doctor because "I got congestive heart failure, I got diabetes," and that he "was really sick and I'm sick now[.]"

¶7. The trial court inquired if the State had offered a plea bargain, which it had—and which the defendant had previously rejected, along with other offers. The State related that an offer was still on the table.

¶8. The trial court then asked Nance, "Are you ready to proceed to trial?" He replied, "Ah, I guess I got to be." Defense counsel then asked for a brief recess to discuss the still-

pending plea bargain.

¶9. After the recess, Nance returned and indicated he wanted to plead guilty on counts 1 and 3. When asked, "How do you plead to the charge of [s]ale of methamphetamine in Count 1 as a habitual offender?" Nance replied, "Guilty." He was then asked, "[H]ow do you plead in Count 3, [s]ale of [m]ethamphetamine, not as a habitual offender?" The defendant replied, "Guilty."

¶10. Nance was then sworn and placed on the stand. The trial court inquired if he "want[ed] to plead guilty in Count 1 as a habitual offender" and "to plead guilty in Count 3 as a non-habitual offender, is that right?" Under oath, Nance answered, "Right."

¶11. The trial court then proceeded to inquire if Nance understood his rights during a guilty plea. He was specifically asked if he understood he would have to plead guilty by admitting under oath he had committed the crimes. He replied that he understood. The trial court then went into a detailed analysis of what the risks were if Nance were convicted before a jury. Nance was also informed about the burden of proof and the elements of the charged crimes.

¶12. Under oath, Nance was then asked "are you pleading guilty because you are, in fact, guilty of Count 1 and Count 3?" The defendant replied, "Yes, sir." Nance also affirmed he wasn't under duress to plead guilty.

¶13. Importantly, the trial court also asked him if he was "under the influence of any illegal drugs or alcohol or undergoing any kind of medical treatment that would keep you from understanding what I have talked to you about?" Nance replied, "No, sir."

¶14. The State then presented a detailed version of how it expected to put on proof Mr.

3

Nance had sold methamphetamine to a confidential informant, on three separate occasions, and how these events were all recorded on video. The State had also confirmed through the Crime Lab that the substance sold was methamphetamine.

¶15. After this recitation, the trial court inquired, "Is that what happened, Mr. Nance?" The defendant responded, "I guess." The trial court pressed for clarification, and Nance equivocated, saying the allegations were "about five years ago," and he was "56 years old." When further asked how he "plead to Count 1 and Count 3," Nance again affirmed, "I plead guilty."

¶16. The trial court then went through the sentencing, including reviewing the prior convictions and sentences Nance had served. When asked about one of the records, and whether it was his, Nance replied, "I don't know. Probably so." He then admitted that a 1990 conviction was his.

¶17. At this point in sentencing, the defendant began to struggle. He told the court that his "sugar doing something" and that he was "about to fall out." Counsel for the defendant asked the trial court if he could sit down, which the trial court allowed. The ADA offered him a piece of candy, which Nance accepted.

¶18. Sentencing continued, and the trial court found Nance was habitual. He was then "sentenced to serve a term of 8 years in prison without the possibility of parole . . . day for day," on Count 1, and for Count 3 to serve a consecutive term for 8 years, plus fines and costs. The State then motioned for Counts 2 and 4 of the indictment to be retired to the file, which the trial court granted. The entirety of the 2016 indictment was also retired to the file

pursuant to the guilty plea.

¶19. After sentencing, the trial court asked, "Mr. Nance, was that the sentence you expected, that you agreed to?" The defendant responded, "Ah, yeah."

¶20. The trial court then stated on the record that Nance was "to be immediately transported because he has a medical situation that is life threatening, I'm given to understand," and ordered an immediate transfer for treatment.

¶21. The trial court entered the sentencing orders the same day of the guilty plea, including the immediate transport order. Likewise, pursuant to the plea, the trial court "retired to the files" the other counts.

¶22. Just a shade over a year after his guilty plea, Nance sought post-conviction relief. He asserted four issues. First, that his indictment did not properly charge him as a habitual offender. Second, that he was subject to double jeopardy because there were two hearings to prove his habitual status. Third, that his plea was involuntary because there was no factual basis for it, he was legally incompetent at the time he made it, he was coerced by his lawyer into making it, and he was not fully advised as to the effects of the plea. Last, Nance claimed that his counsel was ineffective because his lawyer did not determine if he could intelligently enter a plea, that he was not fully advised of the consequences of his plea, and that his counsel did not challenge the habitual offender enhancement.

¶23. Since a petition for post-conviction relief (PCR) is a new civil filing, the trial court ordered supplementation of the file with Nance's guilty plea transcript from the criminal case, along with other relevant material. Armed with this comprehensive view of the claims,

5

the trial court denied the PCR petition without the need for a hearing. The order found specifically that the indictments were not flawed, and that Nance was not subject to double jeopardy and found the other claims to be without merit. Nance then sought appellate review.

## STANDARD OF REVIEW

¶24. "When reviewing a trial court's denial or dismissal of a PCR [petition], we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Bass v. State*, 237 So. 3d 172, 173 (¶4) (Miss. Ct. App. 2017). "Whether an indictment is fatally defective is a question of law that we review de novo." *Bryant v. State*, 238 So. 3d 1213, 1216 (¶7) (Miss. Ct. App. 2018).

## DISCUSSION

### I. The indictment properly charged Nance as a habitual offender.

¶25. The petitioner claims that the indictment did not put him on notice that he was being charged as a habitual offender. His pleading from the trial court argued that "the indictment failed to state with particularity a coherent allegation of habitual offender status." While admitting the indictment had "HABITUAL OFFENDER" typed at the top of it, Nance further argues the omission of the pertinent statute from the indictment renders it void.

¶26. "An indictment is meant to furnish the defendants notice and a reasonable description of the charges against them so that they may prepare their defense." *Jordan v. State*, 995 So. 2d 94, 109 (¶47) (Miss. 2008). "It follows that an indictment is only required to have a clear

and concise statement of the elements of the crime the defendant is charged with" in order to be sufficient. *Id*. Under our precedent, an indictment "does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to have been violated." *Dartez v. State*, 271 So. 3d 733, 742 (¶33) (Miss. Ct. App. 2018).

¶27.     First of all, Nance's argument fails because he specifically plead guilty as a habitual offender.     When a defendant pleads guilty, they waive any argument against habitual offender status if they fail to challenge the sufficiency or validity of prior felony convictions and sentences. *See Keyes v. State*, No. 2018-CP-01660-COA, 2020 WL 1685164, at *2 (¶¶7,8) (Miss. Ct. App. Apr. 7, 2020) (waiver of argument when defendant admitted he had committed the prior felonies); *Vanwey v. State*, 149 So. 3d 1023, 1024 (¶3) (Miss. 2014) (where Supreme Court found waiver because defendant "failed to challenge the sufficiency or validity of her two prior felony convictions and sentences at her plea hearing and then voluntarily and intelligently entered her guilty plea to three counts of selling hydrocodone as a habitual offender").

¶28.     In the transcript of the guilty plea, the State entered two prior convictions from Clay County as evidence of Nance's habitual status.  After his attorney showed him the files, his lawyer asked if the first file was him.  Nance replied, "I don't remember.  Probably so."  As to the second, when asked if it was him, Nance replied, "Yeah."  After a review of the files, the trial court found that he was twice previously convicted.  Like *Keyes* and *Vanwey*, this results in waiver.

¶29.    Regardless of this procedural bar, the indictment was also sufficient to charge Nance as a habitual offender.  The applicable rule at the time Nance was indicted was Rule 11.03 of the Uniform Rules of Circuit and County Court Practice which stated indictments for enhanced punishment "must include both the principal charge and a charge of previous convictions," and "must allege with particularity the nature or description of the offense constituting the previous convictions, the state or federal jurisdiction of any previous conviction, and the date of judgment."[1]

¶30.    As Nance concedes, at the top of the 2014 indictment it states "HABITUAL OFFENDER."  Within each of the four counts it notes that he was previously convicted in Oktibbeha County of the possession of cocaine in 2005; that he was convicted in Clay County for the possession of cocaine in 1989; and the possession of cocaine in Clay County again in 1994.  The indictment also lists the date of judgment for each of the three prior convictions. This complies with Uniform Circuit and County Court Rule 11.03, and so the indictment is sufficient.  Furthermore, while the indictment does not carry the citation to the habitual statute, in accord with *Dartez*, *supra*, this is not required for it to place a defendant on notice that he is being charged as a habitual offender.

¶31.    Furthermore, the indictment was dated April 10 of 2014.  Nance did not plead guilty to the two counts until April 11, 2017—three full years later.  The allegations in the indictment were sufficient to put him on notice that he was being charged as a habitual

---

[1] The current rule for cases indicted after July 1, 2017 requires "the name of the crime, the name of the court in which each such conviction occurred, and the cause number(s), the date(s) of conviction, and, if relevant, the length of time the accused was incarcerated for each such conviction." MRCrP 14.1(b).

8

offender. As a result, we affirm the trial court's ruling that this claim is without merit.

## II. Nance was not subjected to double jeopardy.

¶32. Nance claims that he was somehow subject to double jeopardy because the State did not properly charge him as a habitual in the 2014 indictment.

¶33. For multiple reasons this claim fails. First, as set out above, the State properly indicted Nance as a habitual offender, and he had notice that the State was seeking to prosecute him with an enhanced sentence.

¶34. Second, "Jeopardy attaches when a jury is impaneled or a trial commences where a determination of guilt may be imposed." *Lee v. State*, 759 So. 2d 390, 393 (¶11) (Miss. 2000). In this case, Nance plead before trial. While the State was prepared to proceed that morning with a trial, the jury had not yet been impaneled nor the trial commenced. Jeopardy had not attached.

¶35. Third, double jeopardy is not implicated as it safeguards a defendant for "protection from multiple punishments for the same offense." *Traylor v. State*, 72 So. 3d 531, 532 (¶6) (Miss. Ct. App. 2011). Nance was not subject to multiple punishments for the same offense. Instead, in accord with State law, his punishment was enhanced for Count 1 because he was previously convicted of a felony.

¶36. Last, Nance claims a Supreme Court case requires reversal of his plea. Yet in that case, the case had gone to trial; at the end, "[o]nly one valid conviction was admitted," while the statute requires two for proof of habitual status. *Cox v. State*, 586 So. 2d 761, 768 (Miss. 1991). The Supreme Court held that double jeopardy had attached on this point, ruling that

"[f]ailing in its attempt on the first trial, Mississippi Constitution article 3, § 22 bars the State from perfecting its evidence through successive attempts." *Id*.

¶37.    As set out above, since Nance did not go to trial at all, jeopardy did not attach on the charges.  For this reason *Cox* does not apply.  The trial court concluded this argument was without merit, and we affirm.

### III.    The guilty plea was voluntary.

¶38.    Nance attacks his plea on multiple fronts—that there was no factual basis for it, that he was legally incompetent at the time he made it, and that he was somehow coerced into making it, in part because he was not advised of the effects of the guilty plea.  The transcript of the guilty plea turns back all of these arguments.

### A.    There was a factual basis for the plea.

¶39.    Before accepting a guilty plea, a circuit court must determine that the plea is voluntary and intelligently made and that there is a factual basis for the plea.  *Collins v. State*, 270 So. 3d 63, 66 (¶7) (Miss. Ct. App. 2018).  "In order for a guilty plea to be considered knowing and voluntary, the defendant must know the elements of the charge against him." *Grazzier v. State*, 744 So. 2d 776, 778 (¶3) (Miss. 1999).

¶40.    Importantly, "[a] factual basis for a guilty plea may be established in a number of ways, including by a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant although it is not necessary that the factual basis be established with words spoken from the defendant's own mouth." *Turner v. State*, 864 So. 2d 288, 292 (¶17) (Miss. Ct. App. 2003).  An affirmative confession to the

10

charge is sufficient for establishing a factual basis. *Boyd v. State*, 253 So. 3d 933, 936 (¶9) (Miss. Ct. App. 2018). Further, a bare admission of guilt is enough to consider a guilty plea valid. *Grazzier*, 744 So. 2d at 779 (¶7).

¶41. At the guilty plea hearing, Nance repeatedly told the trial court that he wished to plead guilty to Counts 1 and 3 of the indictment. The State presented to the trial court that it had information from a confidential informant, including video evidence, that Nance had committed the crimes of which he was charged. The State had also tested the substances Nance sold on the video and confirmed they were methamphetamine.

¶42. After the State offered this would be their proof at trial, the trial court asked, "Is that what happened, Mr. Nance?" The defendant responded, "I guess." Nance ultimately affirmed that he "plead guilty" to Counts 1 and 3, after first equivocating that he could not remember. When asked, "How do you plead to the charge of [s]ale of methamphetamine in Count 1 as a habitual offender?" Nance replied, "Guilty." He was then asked, "[H]ow do you plead in Count 3, [s]ale of [m]ethamphetamine, not as a habitual offender?" The defendant replied, "Guilty."

¶43. In accord with our precedent, this is sufficient factual basis for a guilty plea.

### B. Nance has not shown he was incompetent when he plead.

¶44. Despite repeatedly affirming at the time that he wanted to make the guilty plea, Nance now claims he was not competent to do so. His argument focuses on the medical issues he was having at the time, centered on what seems to be a diabetic "crash" described in the transcript.

11

¶45.    "The standard of competency necessary to enter a plea of guilty is the same as that for determining competency to stand trial." *Wood v. State*, No. 2018-CP-00889-COA, 2020 WL 1151161, at *9 (¶40) (Miss. Ct. App. Mar. 10, 2020). "The standard for competence to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Id*. at *8 (¶39) (internal quotation and citation omitted). The petitioner bears "the burden of proof to show that he lacked the competency to enter his guilty plea." *Id*. at *10 (¶49).

¶46.    In *Wood*, a petitioner sought to set aside a guilty plea by showing that he had been diagnosed with anxiety and depression. *Id*. However, a mental evaluation showed that he had superior reading and intellectual scores, and during the guilty plea both the petitioner "and his lawyer confirmed that [he] had the ability to consult with his lawyer regarding potential defenses and that he understood the proceedings against him." *Id*. Given this scenario, we found "no error in the trial court's determination that [he] was competent to enter his guilty plea." *Id*.

¶47.    While Nance now claims his decision making was impaired, he stated the opposite—*under oath*—during the guilty plea. "We give a strong presumption of validity to statements made under oath." *Davis v. State*, 174 So. 3d 299, 305 (¶14) (Miss. Ct. App. 2015) (internal quotation and citation omitted). During the plea colloquy, the trial court specifically asked Nance if he was "under the influence of any illegal drugs or alcohol or *undergoing any kind of medical treatment that would keep you from understanding what I*

12

*have talked to you about*?" (Emphasis added). At this point Nance had already told the trial court that he was generally experiencing some medical issues, but to this specific question he answered, "No, sir."

¶48. The transcript is clear that Nance was suffering a medical issue. During sentencing, his counsel asked for the trial court to allow him to sit, and at the close of the guilty plea he was immediately transported for medical treatment. In his petition, Nance alleges that he "had been without medication for 4 or 5 days" which he needed "to keep [his] blood sugar and pressure down to a level that allows him to . . . think properly and rationally." Yet during the colloquy, Nance actually stated to the trial court that he had gotten his medicine the day before; indeed, this was his excuse for missing court the day before. Furthermore, when specifically asked by the trial court if he was impaired, he answered, "No, sir." As the State points out, the transcript also shows that Nance interacted with both his lawyer and the trial court, including asking questions about revoking his bail.

¶49. Other than his bare assertion that he was too impaired to plead guilty—a claim contradicted by his sworn testimony before the trial court—Nance has offered us no further proof in support of his argument that he was not competent to make the plea. Nance has not shown how his medical issues impacted his decision making abilities. To the contrary, he repeatedly affirmed that he knew what he was doing by pleading guilty. Accordingly, we find he has not met burden of proof on this point, and affirm the trial court's denial of relief.

### C.     Nance was not coerced into making the plea.

¶50. On appeal, Nance claims he was coerced into the plea. In a lengthy screed, he accuses

13

the trial court of violating his rights and having him "kidnaped" and brought to court without authority in some sort of coordinated effort with the Sheriff and the bond company.

¶51.　As set out above, there is the strong presumption of validity to statements made under oath. *Davis*, 174 So. 3d at 305 (¶14).　During the plea, while he was under oath, Nance was asked three questions by the trial court related to whether he was under duress:

> Q.　Has anybody offered you any money or promised you any rewards or hopes of leniency to get you to plead guilty?
>
> A.　No.
>
> Q.　Has anyone threatened you, said they'd beat you up or hurt you or hurt your family, anything like that if you didn't plead guilty?
>
> A.　No, sir.
>
> Q.　Anybody ask you to come into court under oath and make a false statement to me so I would accept your guilty plea?
>
> A.　No, sir.

Nance also repeatedly affirmed that he had indeed committed the crimes charged in Counts 1 and 3 and wished to plead guilty.　There is no merit to his claim that he was coerced into pleading guilty.

¶52.　To the extent Nance now sees some sort of conspiracy that deprived him of his freedom, it appears to be focused in some part on how and why his bond was revoked. Nance did not appear the day before when his case was called, but attempted to excuse his absence by saying he had to go get his medicine.　In any event, Nance plead guilty the following day to two felonies, one as a habitual, at which point his bond was revoked.　There is no support for his extravagant claim that there was some conspiracy to deprive him of his

14

freedom; the reality is, Nance had three prior felony convictions, and plead that day to two more. It was his actions, and the convictions which came as a result, which resulted in his incarceration. There is no proof at all he was coerced, which in any event he swore under oath had not happened.

¶53. Nance further argues that "[d]uring the plea agreement process, the defense counsel managed to persuade [him] that he should abandon his theories of defense and used misinformation to coerce the Petitioner into entering a guilty plea without properly advising him that in doing so he would be sentenced as a habitual offender," and further agreed to the plea without Nance's consent.

¶54. Again, the plain face of the plea transcript shows Nance's argument does not have any merit. As set out above, Nance told the trial court he was not coerced into making the plea. He was repeatedly counseled that he was pleading guilty as a habitual offender on Count 1. He was informed in detail by the trial court the consequences of the plea.

¶55. Nance repeatedly swore under oath that it was his decision to plead guilty. For instance, after being sworn, Nance was asked if he "want[ed] to plead guilty in Count 1 *as a habitual offender*" and "to plead guilty in Count 3 as a non-habitual offender, is that right?" (Emphasis added). Under oath, Nance answered, "Right." The trial court described the consequences of a guilty plea in detail. There is no evidence that his trial counsel somehow made the decision to plead for him; the transcript affirmatively shows that this did not happen. We affirm the trial court's denial of relief on this point.

### IV. Nance was not deprived assistance of effective counsel.

15

¶56. In his last combination of attacks on his plea, Nance argues he was deprived the effective assistance of counsel. He musters three specific arguments on this general claim, which in some ways differ from those arguments he presented in the trial court. To the extent they are different, they are procedurally barred. We will not address issues which were not presented to the trial court and that court given an opportunity to rule on them. *Neese v. State*, 993 So. 2d 837, 843 (¶12) (Miss. Ct. App. 2008).

¶57. "A claim of ineffective assistance of counsel requires proof that counsel's performance was objectively deficient and that the defendant suffered prejudice as a result." *Worth v. State*, 223 So. 3d 844, 849 (¶17) (Miss. Ct. App. 2017). Yet guilty pleas constrain our normal analysis on this point, because "[a] voluntary guilty plea waives claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *Id.* So "to obtain post-conviction relief, a petitioner who pled guilty must prove that his attorney's ineffective performance proximately caused the plea—i.e., that but for counsel's errors, the petitioner would not have entered the plea." *Id.* "This requires proof beyond the petitioner's own conclusory assertions." *Id.* at 849-50.

¶58. Several of Nance's arguments pursue a traditional claim that his lawyer was ineffective, and are not focused on whether the lawyer's alleged failures directly impacted his decision to plead guilty. As a result, they are procedurally barred.

¶59. Those claims that are not barred do not have merit. Echoing his claim that his guilty plea was involuntary or coerced, Nance claims that his attorney "craftily had devised a way

16

to get a guilty plea out of [him], by refusing effective assistance, and allowing the State to use deceit and inveigle him . . . ." Nance's own sworn testimony at the guilty plea proves this assertion false. Nance swore under oath he was pleading guilty of his own decision, that he was not coerced, and that he was not under duress. There is absolutely no proof he was somehow forced into making a guilty plea.

¶60.    Nance then argues his lawyer's performance was deficient because he did not investigate the underlying evidence, apparently claiming if his lawyer had done more work Nance would not have plead; at one point, Nance claims his lawyer should have halted the guilty plea because he should have known there was not enough evidence. However, Nance affirmed repeatedly to the trial court that he committed the crimes, the State presented a detailed itemization of what it would prove at trial (namely, that it had video of Nance selling methamphetamine to a confidential informant on multiple occassions), and Nance admitted he did it. There is no merit to this claim.

¶61.    The last main point by the petitioner is that his lawyer failed him by not investigating his medical history. It is clear from the transcript that Nance was having medical difficulties. However, while they may have been difficult to deal with physically, there is zero proof they impacted Nance's decision-making. He swore as much to the trial court when he affirmed there he was not under a medical condition which would impair his plea. There is no merit to this attack on his counsel's effectiveness.

¶62.    In the end, Nance may not now like the plea deal he received. Yet that day, he was facing a trial on three felony charges with the risk of a habitual sentence *on each*; looming

17

in the future was a separate four-count indictment for four more felony counts, all carrying the risk of habitual sentencing. Nance's counsel obtained a deal where the defendant plead guilty to only two felonies, and only one of those as a habitual, with five more felony charges retired to the file. Just because it was a good deal does not necessarily mean counsel was effective. But in this case, Nance has failed to provide any evidence beyond his conclusory assertions that his counsel's alleged failures proximately caused his plea. We affirm the trial court's denial of relief on the claim for ineffectiveness.

## CONCLUSION

¶63. After having reviewed Nance's variety of efforts to withdraw his guilty plea, we affirm the trial court's denial of relief.

¶64. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**