# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-00767-COA

**WILLIAM ANTONIO AVERY A/K/A WILLIAM**        **APPELLANT**
**AVERY A/K/A WILLIAM A. AVERY**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM ANTONIO AVERY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DISMISSED |
| DISPOSITION: | AFFIRMED - 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ROBERTS AND JAMES, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.    William Antonio Avery appeals the summary dismissal of his post-conviction-relief

(PCR) motion by the Lauderdale County Circuit Court.  On appeal, Avery argues that the

circuit court's dismissal of his PCR motion was error.  Avery claims that he received

ineffective assistance of counsel prior to and during his guilty plea.  Upon review, we find

that Avery's issue is both time-barred and subsequent-writ barred.  Furthermore, his claims

are without merit.  Thus, we affirm the circuit court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶2. Avery was indicted in November 2006, in cause number 691-06, for sale of a controlled substance within 1,500 feet of a church and in cause number 692-06, for possession of a controlled substance with intent to distribute. On January 24, 2007, Avery's privately retained attorney filed a motion to dismiss the indictment for sale of a controlled substance, alleging that the indictment was defective, as it did not sufficiently identify the person to whom Avery allegedly sold the drugs. A few months later, on July 16, 2007, Avery's attorney filed motions to suppress his identification made as a result of a photo lineup and evidence seized based on a warrantless search. In the motion to suppress the lineup, Avery argued that the photo-identification lineup was suggestive in nature and did not incorporate all facts surrounding the arrest. Avery also argued that his warrantless arrest, as well as the subsequent search, violated his Fourth Amendment rights. On April 14, 2008, the circuit court held a hearing on the motion to dismiss and both motions to suppress. At that hearing, the trial judge heard testimony and denied the motion to dismiss, noting that the indictment clearly presented the essential elements of the sale charge and that the use of "confidential informant" rather than the informant's name was not a fatal flaw. After ruling on the motion to dismiss, the court heard Avery's argument on his motions to suppress.

¶3. Officer Greg Lea, who was present at Avery's arrest for the charged offenses, was the only witness examined. First, Avery argued that the photo lineup was impermissibly suggestive, in that law enforcement had presented the confidential informant with his photo in order to confirm that both the informant and law enforcement identified the person shown as Avery, then later asked the informant to identify Avery out of a photo lineup comprised of several men. This, according to Avery, was an impermissible attempt on behalf of law

2

enforcement to bolster the informant's identification of Avery. The court denied the motion to suppress the photo lineup.

¶4.    The court next heard arguments pertaining to the suppression of evidence seized as a result of the warrantless search. Avery argued that his warrantless arrest was illegal, as the alleged felony did not occur in the presence of law enforcement, and any evidence obtained as a result of the arrest was fruit of the poisonous tree. Officer Lea again testified about the circumstances surrounding Avery's arrest and the search incident to that arrest. Officer Lea testified that the Lauderdale County Sheriff's Department Narcotics Task Force had received anonymous phone calls that Avery was selling drugs from a home believed to be his. The task force then placed an agent on the home, which belonged to Avery's fiancée, to conduct surveillance, and this agent believed that his observations of the home confirmed the anonymous tips. The task force then observed a man come and go from the house, and this man later agreed to become a confidential informant for the task force. The informant was given two marked $20 bills to use in what is termed a "buy/bust," in which an informant or undercover officer buys drugs from a suspected dealer, and upon a successful sale, law enforcement immediately moves in and apprehends the alleged dealer. Officer Lea testified that, in his experience, law enforcement immediately moves to make an arrest of the person selling controlled substances in order to recover the buy money given to the informant or undercover agent. Officer Lea also testified that in some circumstances, like Avery's, they move in immediately in order to secure the location for a search warrant and to ensure the suspect has not left the location or destroyed the evidence.

¶5.    Officer Lea testified that in this particular situation, law enforcement could not take

the time to present evidence of the anonymous calls, the officer's observations, and the confirmed purchase of drugs by the confidential informant to a magistrate to get a search warrant because they feared Avery would have left the location in the time necessary to get the warrant processed. Officer Lea stated that in his eleven years of experience as a law enforcement officer, moving in for an arrest without a warrant was the safest course of action to preserve the evidence and crime scene. Upon cross-examination, Officer Lea testified that when law enforcement initially made contact with their informant, he had just left Avery's home and had purchased drugs. At that time, Officer Lea did not believe they had sufficient probable cause to get a search warrant for the property or an arrest warrant for Avery because the informant was not positive that he had purchased the drugs from Avery. The task force then convinced the informant to conduct another purchase from the same man, whom they believed to be Avery. After the planned purchase, the informant left the house, and officers confirmed with him that he had purchased drugs from Avery. When Avery exited the house shortly thereafter, law enforcement moved in and arrested him. Upon searching him, two $20 bills were found, matching those given to the informant by law enforcement. Law enforcement took Avery into custody, and a judge signed an arrest warrant the following day. After hearing Officer Lea's testimony as to the above facts, the trial judge announced that he would take the motion to suppress under advisement.

¶6.    On June 8, 2009, over a year after the motion hearings, Avery entered a guilty plea to the charge of sale of a controlled substance within 1,500 feet of a church in cause number 691-06. Though a transcript of the plea hearing is not included in the record, Avery's plea petition indicates that this plea was a "best interest" plea, made pursuant to *North Carolina*

4

*v. Alford*, 400 U.S. 25 (1970).[1]  On his plea petition, Avery initialed beside the section enumerating the constitutional rights he was waiving by pleading guilty.  He acknowledged through signing the petition that he understood the minimum and maximum penalties for the crimes, and he understood that the judge did not have to follow the State's recommendation. He did not claim to be suffering from any mental disease or defect.  He initialed beside the paragraph stating, "I believe that my lawyer has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help he has given me."  Avery swore under oath that his plea petition was true.  Avery's attorney wrote the following on the plea petition, by which Avery initialed and later acknowledged through his signature:

> I am charged with sale of cocaine to a [confidential informant] on 8-3-06 in [Lauderdale County, Mississippi].  I have reviewed the discovery with my attorney and my family.  I have reviewed the DA['s] plea offer and feel it is in my best interest to accept the plea offer rather than risk additional consequences of a trial.  This plea is pursuant to *Alford v. S.C.*, [sic] while maintaining my innocence.

Following a plea hearing, a transcript of which was not made available to this Court, the trial judge accepted Avery's plea and sentenced him in accordance with the State's plea offer. As a result of Avery's plea, the charges in cause number 692-06 were nolle prossed and an agreement was reached to not revoke his probation on a prior sentence.  Additionally, he was sentenced to thirty years in the custody of the Mississippi Department of Corrections, with twenty-nine years and three hundred and fifty-nine days suspended, six days to serve, followed by five years of reporting post-release supervision (PRS) and five years of non-

---

[1] In *Alford*, the Supreme Court ruled that a defendant may plead guilty in order to avoid conviction and a possibly stiffer sentence at trial without admitting to actual guilt of the charged crime.

reporting PRS. Avery also received credit for the six days he had already served in jail prior to posting bond. Thus, once Avery's plea was accepted by the court, he served no additional jail time and immediately began PRS. On October 13, 2010, as a result of new felony convictions against Avery while he was on PRS, the trial judge entered an order revoking PRS and sentenced Avery to serve the twenty-nine years and three hundred and fifty-nine days that had been suspended as a result of his plea agreement in cause number 691-06.[2]

¶7.    On March 31, 2011, Avery filed a PCR motion in the Lauderdale County Circuit Court, attacking his guilty plea in cause number 691-06. On July 8, 2011, the trial judge summarily dismissed that motion. On August 14, 2012, this Court affirmed that dismissal in *Avery v. State*, 95 So. 3d 765 (Miss. Ct. App. 2012), finding Avery's arguments without merit. In that case, Avery claimed his attorney "forged" his name to several motions for continuance, which resulted in a violation of Avery's right to a speedy trial. This, according to Avery, amounted to ineffective assistance of counsel. This Court found that there was no merit to Avery's claims of forged signatures and additionally found that Avery's trial counsel sufficiently participated in pretrial discovery and investigation, including hiring a private investigator to interview possible witnesses. As a result, the Court denied Avery's claim of ineffective assistance of counsel. The Court noted that his claim of a speedy trial violation

---

[2] Avery is currently serving time on three different sentences. He is serving a ten-year sentence for possession of methamphetamine in cause number 645-02. He is also serving twenty-nine years and three hundred and fifty-nine days for the sale of cocaine in case number 691-06, the conviction he appeals here. Finally, Avery is serving a combined sixty-year sentence for the sale of cocaine and felony fleeing in cause number 439-10. Avery was convicted by a jury in cause number 439-10, which led to the probation revocation in his prior two convictions. The supreme court affirmed his convictions and sixty-year habitual-offender sentences. *Avery v. State*, 119 So. 317, 321 (¶13) (Miss. 2013).

was procedurally barred and without merit. Thus, Avery's first PCR motion was denied. The Mississippi Supreme Court denied certiorari on March 7, 2013. The mandate issued on March 28, 2013. On February 7, 2014, Avery filed a second PCR motion with the Lauderdale County Circuit Court again attacking this same conviction, this time raising only one issue: Avery contended he received ineffective assistance of counsel due to his attorney's advising him to plead guilty to charges resulting from an illegal arrest. The circuit court summarily dismissed Avery's PCR motion on May 19, 2014. On June 2, 2014, Avery filed his present appeal.

## ISSUES

¶8. In this PCR motion, Avery's second, he claims he received ineffective assistance of counsel. Specifically, Avery alleges that his attorney failed to recognize that his arrest was illegal, and this failure led his attorney to incorrectly advise him to enter a best-interest guilty plea. Avery claims that if his attorney had properly informed him about the illegality of his arrest, he would not have pled guilty and would have gone to trial.

¶9. Finding Avery's petition procedurally barred and without merit, we affirm.

## STANDARD OF REVIEW

¶10. When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's factual findings if they are clearly erroneous. *Rowland v. State*, 42 So. 3d 503, 506 (¶8) (Miss. 2010). We review questions of law de novo. *Id.*

## ANALYSIS

¶11. Mississippi Code Annotated section 99-39-5(2) (Supp. 2014), part of the Uniform Post-Conviction Collateral Relief Act (UPCCRA), provides a three-year time period in which

7

to file for post-conviction relief.  Section 99-39-5(2) reads, in part:

> A motion for relief under this article shall be made within three (3) years after the time in which the petitioner's direct appeal is ruled upon by the Supreme Court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction.

The UPCCRA also provides three exceptions to the general statute of limitations.  In order to avoid the statutory time bar, the movant must show: (1) an intervening decision of a higher court; (2) new evidence that was not reasonably discoverable at trial; or (3) that his sentence has expired, or his parole, probation, or conditional release was unlawfully revoked.  Miss. Code Ann. § 99-39-5(2)(a)-(b).  Additionally, section 99-39-23(6) of the UPCCRA provides that a previous order dismissing a PCR motion is a bar to successive PCR motions:

> The order as provided in subsection (5) of this section or any order dismissing the petitioner's motion or otherwise denying relief under this article is a final judgment and shall be conclusive until reversed.  It shall be a bar to a second or successive motion under this article.  Excepted from this prohibition is a motion filed under Section 99-19-57(2), raising the issue of the convict's supervening mental illness before the execution of a sentence of death.  A dismissal or denial of a motion relating to mental illness under Section 99-19-57(2) shall be res judicata on the issue and shall likewise bar any second or successive motions on the issue.  Likewise excepted from this prohibition are those cases in which the petitioner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence.  Likewise excepted are those cases in which the petitioner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.  Likewise excepted are those cases in which the petitioner has filed a prior petition and has requested DNA testing under this article, provided the petitioner asserts new or different grounds for relief related to DNA testing not previously presented or the availability of more advanced DNA technology.

8

Miss. Code Ann. § 99-39-23(6) (Supp. 2014). Though the supreme court had consistently held that res judicata applied to PCR cases involving fundamental constitutional rights, the court's recent holding in *Smith v. State*, 149 So. 3d 1027, 1032 (¶13) (Miss. 2014), appears to state that res judicata is a procedural bar that can be overcome by asserting a violation of a fundamental constitutional right.

¶12. Avery filed the present PCR motion on June 2, 2014, more than five years after the date of his guilty plea. While Avery does not assert any statutory exception to the time bar, he does claim that he received ineffective assistance of counsel. Though his underlying basis for his ineffective-assistance-of-counsel claim has changed, it is nevertheless a successive PCR motion premised on ineffective assistance of counsel. This Court has already once affirmed the denial of an ineffective-assistance claim filed by Avery. *See Avery*, 95 So. 3d at 768 (¶11).[3] Prior to *Smith*, Avery's second PCR motion alleging ineffective assistance of counsel would have been barred by the successive-writ bar; prior to *Rowland*, this motion would also have been time-barred. Yet, due to the supreme court's holdings in *Rowland* and

_____

[3] Avery actually has filed multiple PCR motions with this Court. Avery's first PCR motion attacking his conviction in cause number 691-06 was dismissed by the trial court and affirmed by this Court in *Avery*, 95 So. 3d at 768 (¶11). Avery also filed a PCR motion attacking his conviction in cause number 645-02, which this Court dismissed in *Avery v. State*, 102 So. 3d 1178, 1182 (¶13) (Miss. Ct. App. 2012). Additionally, Avery directly appealed his conviction in cause number 439-10, which was affirmed by the supreme court in *Avery*, 119 So. 3d at 321(¶12). Avery later petitioned for leave to file for post-conviction relief, but that petition was denied by the supreme court. *Avery v. State*, No. 2013-M-01622 (Miss. 2013) (order denying application for leave to proceed to the trial court on post-conviction collateral relief).

*Smith*, when an appellant raises allegations of fundamental-constitutional-right violations, it appears necessary to discuss those allegations on the merits.[4] However, the supreme court has not explicitly found that there is a fundamental constitutional right to effective assistance of counsel for noncapital cases sufficient to defeat procedural bars. *But see Grayson v. State*, 118 So. 3d 118, 126 (¶14) (Miss. 2013) (holding there is a fundamental constitutional right to effective assistance of PCR counsel when sentenced to death). It is thus unclear as to the status of ineffective-assistance-of-counsel claims as a fundamental right that can overcome procedural bars in non-death penalty cases.

¶13. However, in order to prevail on a claim of ineffective assistance of counsel, Avery must demonstrate two things: (1) that his "counsel's representation fell below an objective standard of reasonableness"; and (2) that but for counsel's errors, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88

---

[4] We find intellectually stimulating the argument that a PCR movant's claim that his fundamental constitutional rights were somehow violated forever insulates his claim from any procedural bar. The very first ground for relief in the UPCCRA, section 99-39-5(1)(a), permits a collateral attack on a final conviction based on a violation of the Constitution of the United States or the Constitution or laws of Mississippi. There is no distinction in the statute between "fundamental" and "nonfundamental" constitutional rights. Additionally, the Legislature has given the movant three years to make such a claim. Furthermore, the Legislature has statutorily prohibited the successive filing of PCR motions absent certain statutory exceptions. Avery has already litigated his ineffective-assistance claim once to a final mandate. He now wants to relitigate that same claim, again claiming the procedural bars do not apply. Approving such a procedure would create a perpetual cause of action, authorizing relitigation of the same claim decades after it occurred. We believe such to be nonsensical.

(1984)). When applying the test to a guilty plea, Avery "must show that there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty, would have insisted on going to trial, and the outcome would have been different." *Id.* at (¶7). Additionally, "a defendant must plead claims of ineffective assistance of counsel with specificity, and the claim must be supported by affidavits other than his own." *McBride v. State*, 108 So. 3d 977, 980 (¶11) (Miss. Ct. App. 2012) (citing *Robertson v. State*, 669 So. 2d 11, 13 (Miss. 1996)). When a movant fails to attach any supporting affidavits and relies solely on his own sworn motion, his ineffective-assistance claim must fail. *Id.*

¶14. In support of his claim of ineffective assistance, Avery alleges that his attorney, "being aware of all the fact[s] of the appellant's warrantless arrest, should have known that the appellant[']s arrest was illegal, and should not have advised the appellant to plea guilty." Avery presents no affidavit or statement other than his own to support his claim of ineffective assistance. Avery claims that but for his attorney's advice to enter an *Alford* plea, he would have insisted on going to trial. Avery recognizes that his attorney moved to suppress evidence obtained as a result of an allegedly illegal arrest and that the circuit court denied that motion. However, Avery claims that his attorney should have recognized the circuit court's ruling as erroneous, which would have prompted him to proceed to trial, where, should he have been found guilty, he would then have had standing on direct appeal to challenge the illegal arrest. Although these claims by Avery may satisfy part of the ineffective-assistance analysis—he would have insisted on trial—there is no evidence that

11

Avery's counsel made any error in advising him to accept the State's plea offer.

¶15. Avery has failed to prove the first part of the *Strickland* analysis. He has not sufficiently alleged that his attorney's performance fell below an objective standard of reasonableness. Avery asserts that his attorney's performance was deficient because he failed to recognize or failed to inform Avery that the trial judge's ruling on the suppression motion was erroneous. While the judge's ruling is not part of the appellate record, the first (and possibly only) hearing on the suppression motion is included. There is nothing in the record to indicate that the trial judge's denial of the motion to suppress was erroneous, and therefore, there is nothing to support Avery's assertion that his attorney was deficient in not recognizing this "error." Additionally, it is well-settled that law enforcement may arrest a suspect without a warrant where "the officer has reasonable ground to believe that a felony has been committed by the person to be arrested." *Jones v. State*, 841 So. 2d 115, 126 (¶20) (Miss. 2003) (citing Miss. Code Ann. § 99-3-7 (Rev. 2000); *Alexander v. State*, 503 So. 2d 235 (Miss. 1987)). Avery's attorney presented a motion to suppress evidence to the court and argued zealously in favor of suppression at a hearing on the motion. The motion was denied, and the trial judge's decision in denying that motion is not before us; thus we will not second-guess him.[5] Avery's attorney, knowing that evidence of the arrest and drug sale

---

[5] Given the fact that law enforcement may arrest without a warrant where probable cause for a felony exists, there likely was no error in the trial judge's ruling on the motion. *See Jones*, 841 So. 2d at 126 (¶20); Miss. Code Ann. § 99-3-7(1) (Supp. 2014) ("An officer . . . may arrest any person without warrant . . . when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it[.]").

would be presented to a jury, encouraged Avery to take advantage of the district attorney's very generous plea offer. Because Avery took advantage of the district attorney's plea offer, he walked away from court the day of his plea under supervised PRS, having been given credit for time served. Had he proceeded to trial and been found guilty, he would have possibly been facing a sentence not only for sale of cocaine within 1,500 feet of a church but also for possession with intent, as well as a revocation of his probation in cause number 645-02. Additionally, as to the second *Strickland* prong, Avery presents absolutely no evidence supporting or even suggesting that the outcome of his case would have been different had he proceeded to trial. The closest he comes to presenting that argument is a statement that he would have been able to challenge his illegal arrest upon direct appeal. By that very statement, Avery is assuming he would have been convicted had he proceeded to trial.

¶16.  We find nothing to support Avery's claim of ineffective assistance of counsel. Avery fails to satisfy either prong of the *Strickland* analysis. He has furnished no affidavit other than his own to support his claim. He does not show that his counsel's performance fell below an objective standard of reasonableness. He does not show that, even assuming errors on his attorney's part, the outcome would have been different had he proceeded to trial. It is evident that Avery's current—and second—PCR motion on this conviction is nothing more than an attempt to relitigate the trial court's denial of his motion to suppress. Furthermore, because there is no basis for his claim, it has no merit. The supreme court has not yet held that effective assistance of counsel is a fundamental constitutional right that may overcome

13

procedural bars in noncapital cases; therefore, we additionally find that Avery's motion is both time-barred and subsequent-writ barred. Accordingly, we affirm.

**¶17.    THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**