# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01032-COA

**GREGORY TYLER MOORE A/K/A GREGORY MOORE**           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2016 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | VALERIE LAUREL MOSS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1. On August 5, 2013, Gregory Tyler Moore pleaded guilty to five counts of auto burglary and one count of burglary of a dwelling and was sentenced by the Rankin County Circuit Court to fifty years in the custody of the Mississippi Department of Corrections (MDOC).[1] Moore filed two motions for post-conviction relief (PCR) in 2014 (one for his auto-burglary convictions and one for the burglary-of-a-dwelling conviction), which the

---

[1] He was sentenced to five consecutive seven-year sentences for each automobile-burglary conviction and twenty-five years for burglary of a dwelling, with ten years suspended, and five years of supervised probation.

circuit court dismissed. In 2016, Moore filed the instant PCR motion. The circuit court determined the motion was procedurally barred, and Moore was not entitled to any relief for his claims. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Twenty-one-year old Moore was charged with six counts of auto burglary, five counts of burglary of a dwelling, and one count of statutory rape. After dismissing his original lawyer, Moore's parents hired attorneys John and Sherwood Collette in March 2013 to represent Moore. In July 2013, John Collette informed Moore that the State would recommend a thirty-five-year sentence if Moore entered a guilty plea. Moore refused, feeling the plea offer was excessively punitive since he had never before been guilty of any felony.

¶3. On August 2, 2013, a second plea offer was submitted for Moore to plead guilty to five counts of auto burglary and one count of burglary of a dwelling for a cumulative sentence of fifty years in the custody of the MDOC. According to Moore, Sherwood Collette said that although Moore would have to serve one-quarter of his sentence (twelve and one-half years), he could reduce his time for parole eligibility from twelve and one-half years to approximately six years by receiving "trusty time" and "meritorious earned time." Moore claims that he entered guilty pleas to the six counts based on the attorney's advice.[2] Moore later discovered that trusty earned time and meritorious earned time could not reduce the time served to be parole eligible, and he would have to serve twelve and one-half years before

_____

[2] In exchange for this plea, the State agreed to nolle pros the statutory-rape charge, one count of auto burglary, four counts of house burglary, and an unindicted count of attempted escape.

2

being eligible. He also discovered he would not be eligible for placement in a work-center facility.

¶4. On February 7, 2014, a PCR motion was filed regarding Moore's conviction for burglary of a dwelling, which alleged his guilty plea was not voluntary. A second PCR motion was filed on March 6, 2014, regarding Moore's convictions for automobile burglary. This motion asserted several errors, including ineffective assistance of counsel and raising mental-competency issues. Although both motions stated that they were submitted "by and through counsel," only Moore's notarized signature was present on each. There was no attorney listed as representing Moore. The circuit court dismissed both motions on June 17, 2014, finding that Moore was not entitled to any relief. Moore did not appeal the court's judgment.

¶5. Moore filed another PCR motion on March 8, 2016, arguing his guilty pleas to the six counts were involuntary, as they were based on the misrepresentations by his trial counsel regarding his parole eligibility (ineffective-assistance-of-counsel claim). He also contended that he did not authorize the filing of the two prior PCR petitions, which were "prepared and filed" by Robert Tubwell, a non-attorney engaged in the unauthorized practice of law; so his current PCR motion should be not be procedurally barred as successive. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2015).

¶6. The circuit court concluded Moore's claims did not except the motion from procedural bars and dismissed the PCR motion as successive. The court also found that Moore was not entitled to any relief for his claims of involuntary plea and ineffective

3

assistance of counsel. Moore filed a motion for reconsideration or, in the alternative, to clarify the judgment, reasserting his claims that his involuntary plea was a violation of his fundamental constitutional right to due process and that his prior PCR motions were prepared and filed by a "person engaged in the unauthorized practice of law" and should not be considered "valid." The circuit court denied the motion, and Moore now appeals.

## STANDARD OF REVIEW

¶7. "If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief," the trial court may summarily dismiss a PCR petition. Miss. Code Ann. § 99-39-11(2) (Rev. 2015). The summary dismissal of a defendant's PCR motion will be affirmed "if [he] fails to demonstrate a claim procedurally alive substantially showing the denial of a state or federal right." *Salter v. State*, 184 So. 3d 944, 948 (¶10) (Miss. Ct. App. 2015) (citing *White v. State,* 59 So. 3d 633, 635 (¶4) (Miss. Ct. App. 2011)). "A trial court's dismissal of a PCR petition will not be reversed absent a finding that the trial court's decision was clearly erroneous." *Id*. (citing *Wilson v. State,* 76 So. 3d 733, 735 (¶9) (Miss. Ct. App. 2011)). Issues of law are reviewed de novo. *Id.*

## DISCUSSION

### I. Whether Moore's PCR motion is a successive writ.

¶8. Moore contends that the circuit court should not have dismissed his latest PCR motion as successive. In his PCR motion, Moore argued his two prior PCR motions "were not properly prepared or filed pursuant to the requirements of the Mississippi Uniform Post-

4

Conviction Collateral Relief Act [(UPCCRA)]," and the person who filed and prepared the first two PCR motions, Tubwell, was engaged in the unauthorized practice of law.[3] Moore avers in his affidavit that he "never met or spoke with Robert Tubwell" and that he "did not ask or give permission to Tubwell to file those motions." However, Moore does not allege that his signature on the motions was forged; he merely asserts that the burden is on the State to prove the signatures were his, and Tubwell's authorship and filing of the motions rendered the prior motions "null and void."[4] The State argues that the record does not support Moore's claim that the prior motions were not authorized by him as his signature is on the two prior PCR motions.

¶9.     First, we find that Moore's notarized signatures constitute prima facie evidence that he indeed signed the previous PCR motions. *See Mack Fin. Corp. v. Decker*, 461 S.W.2d 228, 230 (Tex. Civ. App. 1970) (An instrument acknowledged by the defendant "before a notary public . . . is prima facie evidence of the execution of the document.") He has submitted no evidence to the contrary. Therefore, we find that State has met its burden of proof that the signatures were Moore's.[5]

¶10.    While there is no Mississippi caselaw addressing the validity of a motion filed by a

---

[3] The circuit court made no findings on this issue, except to conclude that Moore's PCR motion was procedurally barred.

[4] Moore attached an exhibit to his appeal showing Tubwell was enjoined by the DeSoto County Chancery Court from engaging in the practice of law, but this was not part of the record before the trial court. He requests that this Court take judicial notice of the order. Based on our analysis, we find the exhibit not relevant in this instance.

[5] We also note that the notary was from Lauderdale County, where Moore is in custody.

5

person unauthorized to practice law, Moore cites cases from other jurisdictions that have held court filings by a person not authorized to practice law are a nullity. In *Preston v. University of Arkansas*, 128 S.W.3d 430, 437-38 (Ark. 2003), the Arkansas Supreme Court held that a complaint filed by Oklahoma attorneys in Arkansas constituted unauthorized practice of law, and the complaint was "a nullity." *See also Shipe v. Hunter*, 699 S.E.2d 519, 520 (Va. 2010) ("[A] pleading, signed only by a person acting in a representative capacity who is not licensed to practice law in Virginia, is a nullity."); *Carlson v. Workforce Safety & Ins.*, 765 N.W.2d 691, 704 (N.D. 2009) (concluding the filing of a request for reconsideration by nonresident attorneys from Ohio, not admitted to practice in North Dakota, was void).

¶11. These cases are distinguishable from the present case for one simple reason – Tubwell did not sign either PCR motion; nor is his name listed on either motion as Moore's attorney. Although the PCR motions both contain form language that Moore was filing the petition "by and through counsel," the only signature on the motions is Moore's, and his signature is attested by a notary. *Compare Preston*, 128 S.W.3d at 437 (finding no merit to the Prestons' claim their complaint was filed "pro se . . . because they hired attorneys to handle their case, and *those attorneys signed the complaint*" (Emphasis added)).

¶12. "[T]o be entitled to an evidentiary hearing, 'a [movant] must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact that, if concluded favorably to the [movant], would warrant relief." *Hamilton v. State,* 44 So. 3d 1060, 1067 (¶21) (Miss. Ct. App. 2010) (superseded by statute on other grounds) (quoting *McCuiston v. State,* 758 So. 2d 1082, 1085 (¶9) (Miss. Ct. App. 2000)). "This may not be accomplished through [the

movant's] own unsupported allegations." *Id*. (quoting *McCuiston,* 758 So. 2d at 1085-86 (¶9)). There is no evidence of any representation by Tubwell in the record except for Moore's assertion in his affidavit. While Moore claims his mother hired Tubwell, her affidavit is oddly silent on this issue. She makes no mention of Tubwell or the two prior PCR motions. Therefore, Moore's "unsupported allegations" do not warrant an evidentiary hearing on this issue, and we affirm the court's finding that Moore's motion is procedurally barred as successive.[6]

II. **Whether the advice by Moore's attorney constituted ineffective assistance of counsel and rendered his guilty plea involuntary.**

¶13. Moore argues that his trial attorney's "incorrect advice" – that he could decrease his time for parole eligibility through "trusty time" and "meritorious earned time" – induced him to enter a guilty plea, constituting ineffective assistance of counsel and rendering his plea involuntary.[7] Moore's appellate counsel has acknowledged that the language of the statute concerning parole eligibility shows that, at the time Moore entered his guilty pleas,

---

[6] Notwithstanding this finding, this Court does not condone Tubwell's history of acting as some type of freelance writ writer after his release from prison. *See Miss. Bar v. Thompson*, 5 So. 3d 330, 333-38 (¶¶3-10, 35) (Miss. 2008) (Tubwell, a paralegal, independently communicated with an inmate and mailed him a pro se PCR petition to file without an attorney's representation, causing the attorney to be in violation of the Mississippi Rules of Professional Conduct.) The court, however, is concerned that adopting Moore's argument could encourage prisoners to file a first PCR motion drafted by a person unauthorized to practice law, knowing that if he were unsuccessful, he could later claim the motion was void and file a second motion, circumventing the successive-motion procedural bar.

[7] Although Moore asserted in his PCR motion that counsel failed to investigate his case and properly prepare for trial, he has abandoned this argument on appeal.

7

meritorious earned time could be used to reduce time served for parole eligibility.[8] But Moore still maintains that, because the attorney told him that he could cut his parole-eligibility time in half (to six years), and he entered his plea based on this advice, he "was prejudiced by counsel's deficient performance" and is entitled to an evidentiary hearing.

¶14. An ineffective-assistance-of-counsel claim requires a showing that (1) counsel's performance was deficient, and (2) this deficient performance resulted in prejudice to the defendant. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). "In the context of a guilty plea, 'one must show counsel's errors proximately resulted in the guilty plea and, but for counsel's error, the defendant would not have entered the guilty plea.'" *Savinell v. State*, 214 So. 3d 1061, 1064 (¶9) (Miss. Ct. App. 2016) (quoting *McCollum v. State*, 81 So. 3d 1191, 1193 (¶8) (Miss. Ct. App. 2012)). However, while "errors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA, . . . the supreme court has not held that ineffective-assistance-of-counsel claims in noncapital cases invoke a fundamental right that eludes the UPCCRA's procedural bars." *Sanders v. State*, 179 So.

---

[8] Mississippi Code Annotated section 47-7-3(2) (Rev. 2010) stated:

Notwithstanding any other provision of law, an inmate shall not be eligible to receive earned time, good time or any other administrative reduction of time which shall reduce the time necessary to be served for parole eligibility as provided in subsection (1) of this section*; however, this subsection shall not apply to the advancement of parole eligibility dates pursuant to the Prison Overcrowding Emergency Powers Act. Moreover, meritorious earned time allowances may be used to reduce the time necessary to be served for parole eligibility as provided in paragraph (c) of subsection (1) of this section*.

(Emphasis added). In 2014, section 47-7-3 was amended and the above italicized language was deleted. Neither party has quantified how much meritorious time would have reduced Moore's time for parole eligibility.

3d 1190, 1192 (¶9) (Miss. Ct. App. 2015).

> Though "it is conceivable that under the facts of a particular case, a lawyer's performance was so deficient, and so prejudicial to the defendant that the defendant's fundamental constitutional rights were violated," our supreme court "has never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar."

*Williams v. State*, 110 So. 3d 840, 844 (¶21) (Miss. Ct. App. 2013) (quoting *Smith v. State,* 922 So. 2d 43, 47 (¶9) (Miss. Ct. App. 2006)). None of the cases cited by Moore to support his claim of an involuntary plea – *Sylvester v. State*, 113 So. 3d 618 (Miss. Ct. App. 2013), *Readus v. State*, 837 So. 2d 209 (Miss. Ct. App. 2003), and *Tiller v. State*, 440 So. 2d 1001 (Miss. 1983) – involve claims subject to a procedural bar. In order to eliminate the procedural bar, Moore would have to establish that counsel's ineffective assistance caused him to enter his plea, and he would not have entered the plea but for counsel's "incorrect advice."

¶15. A defendant's claims of ineffective assistance of counsel must be pled "with specificity, and the claim must be supported by affidavits other than his own." *Shavers v. State*, 215 So. 3d 502, 507 (¶14) (Miss. Ct. App. 2016) (quoting *Avery v. State*, 179 So. 3d 1182, 1188-89 (¶13) (Miss. Ct. App. 2015)). "When a movant fails to attach any supporting affidavits and relies solely on his own sworn motion, his ineffective-assistance claim must fail." *Id*. (quoting *Avery*, 179 So. 3d at 1189 (¶13)). As there is a presumption of truthfulness "attached to a defendant's solemn declarations in open court . . . a collateral attack on a facially correct plea must include supporting affidavits of other persons." *Readus*, 837 So. 2d at 213 (¶11).

9

¶16.   In *Readus*, Antonio Readus claimed he entered his guilty plea because his attorney "promised 'six months' and 'that he would be sent to the [Regimented Inmate Discipline program] and ten years on paper.'" *Id*. at 214 (¶14). His mother's supporting affidavit stated the attorney also told her "six years and [then] said something about papers after that" the morning of the sentencing hearing. *Id*. at 211 (¶5). Since "[b]oth affidavits aver[red] that Readus's lawyer instilled an expectation of a far more lenient sentence than Readus actually received," we remanded for an evidentiary hearing. *Id*. In *Sylvester v. State*, 113 So. 3d 618, 621 (¶5) (Miss. Ct. App. 2013), the movant and his sister submitted affidavits, with the sister corroborating Sylvester's claim the attorney told them Sylvester would earn trusty time and be released on post-release supervision after serving five years. *Id*. at 622 (¶13).

> [H]is affidavit and his sister's affidavit assert he was misinformed as to his eligibility for trusty earned time. Thus, the plea colloquy did not correct the alleged misinformation. . . . For these reasons, . . . Sylvester is entitled to an evidentiary hearing on whether his plea was knowingly, intelligently, and voluntarily entered[.]

*Id*. at 623-24 (¶20).

¶17.   In a similar case, *Thinnes v. State*, 196 So. 3d 204, 210-11 (¶¶26-27) (Miss. Ct. App. 2016), we remanded for an evidentiary hearing as the defendant "presented sufficient corroborating evidence" that his attorneys "erroneously advised him that he would be eligible for parole after serving three years of his twelve-year sentence."

> [T]he circuit court's warning that *no one could guarantee* [*Gregory*] *Thinnes parole failed to directly address Thinnes's parole ineligibility*. While the circuit court's question reflected that no guarantee of parole, probation, or early release existed, the question also appeared to indicate that the possibility for such treatment existed. The transcript therefore fails to show that the circuit court corrected the misinformation that Thinnes's [seven] supporting

10

affidavits allege his attorneys provided him as to parole eligibility.

*Id*. at 209-10 (¶21) (emphasis added). "[B]ecause parole is a matter of legislative grace, parole eligibility or noneligibility is not considered a 'consequence' of a guilty plea." *Mosley v. State*, 150 So. 3d 127, 136-37 (¶29) (Miss. Ct. App. 2014) (quoting *Thomas v. State,* 881 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2004)). "[I]t is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted." *Id.* But "a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole *and pleads guilty in reliance on the misinformation*." *Id.* (emphasis added).

¶18.    Beside his own affidavit, Moore has failed to show that, but for counsel's advice, he would not have entered his guilty plea. "When the only support the movant offers is his own affidavit, and it is contradicted by unimpeachable documents in the record, an evidentiary hearing is not required." *Lackaye v. State*, 166 So. 3d 560, 564 (¶12) (Miss. Ct. App. 2015) (citing *Gable v. State,* 748 So. 2d 703, 706 (¶12) (Miss. 1999)). Furthermore, Moore has offered no "good cause" for failing to obtain additional affidavits. *Compare* Miss. Code Ann. § 99-39-9(1)(e) (Rev. 2015) ("The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained.");[9] *with Walden v. State*, 201 So. 3d 1042, 1046 (¶15) (Miss. 2016) (reversing trial court's decision to dismiss PCR motion

---

[9] While the Mississippi Supreme Court recently declared subsection (2) of this statute unconstitutional, *see Ashwell v. State*, 226 So. 3d 69, 72 (¶9) (Miss. 2017) (finding our Constitution "grants the Legislature no power to limit the number of claims a litigant may plead in a particular hearing"), the ruling did not affect the requirements of subsection (1)(e).

11

because movant "specifically pleaded his counsel's alleged ineffective assistance, and because he asserted potential good cause for his failure to provide additional affidavits").

¶19. At the plea hearing, the circuit judge thoroughly covered what rights Moore was giving up by entering his guilty pleas and inquired if Moore understood "the minimum and maximum punishment that could be imposed for each of the crimes[.]" Moore acknowledged that he understood he could be "looking at . . . [a] maximum period of incarceration of 70 years." The court asked Moore if he was promised "leniency or anything of that nature in an effort to get [him] to change [his] pleas." Moore replied, "No, sir." The court also asked:

| THE COURT: | Have you had an opportunity to discuss with your attorney all the facts and circumstances related to each of the crimes you are offering to plead guilty to? |
|---|---|
| [MOORE:] | Yes, sir. |
| THE COURT: | Did your discussions with your attorney include any possible defenses that you may have to these charges? |
| [MOORE:] | Yes, sir. |
| THE COURT: | Did your discussions with your attorney also include the elements of the crimes? |
| [MOORE:] | Yes, sir. |

. . . .

| THE COURT: | You've been represented by Mr. Collette. Are you satisfied with his representation? |
|---|---|
| [MOORE:] | Yes, sir. |
| THE COURT: | Have you got any complaints you wish to make about |

12

your attorney?

[MOORE:]			No.

The judge questioned Moore several times if he was sure he wanted to plead guilty. The judge was very thorough, explaining: "It's not too late at this point, Mr. Moore, to stop this hearing and proceed to trial, but it will be once I accept your pleas of guilty. So before I do that, I need to make certain that this is what you want to do." Moore replied, "Yes, sir." *See Turner v. State*, 169 So. 3d 945, 947-48 (¶10) (Miss. Ct. App. 2014) (finding the record did not support movant's claim that his attorney promised he would be sentenced as a nonhabitual offender and would receive parole, as movant told the judge at plea hearing that "no one had promised him 'any kind of rewards or hopes of leniency' to obtain his guilty plea"). While there was no discussion regarding parole eligibility or trusty time at the plea hearing, the plea petition signed by Moore stated:

> My lawyer has counseled and advised me, and has made no threats or promises of any type or kind to induce me to enter this plea of guilty. The decision to seek entry of this plea was my own and mine alone, based on my own reasons and free from any outside influences.
>
> . . . .
>
> *I understand that no one can assure me of parole or early release from prison.*

(Emphasis added). Moore signed the petition at the time he was told of the State's plea offer. Therefore, we find that Moore's guilty plea was facially correct.

¶20. Moreover, the supporting affidavit by Moore's mother did not provide sufficient corroboration to justify an evidentiary hearing. Her affidavit simply states that when she hired John Collette to represent Moore, he had "mentioned something about [her son] having

13

to serve six years" and "something about forty percent (40%), but I didn't understand what he was talking about." Unlike the supporting affidavits in *Readus*, *Sylvester* and *Thinnes*, this vague representation about serving six years made by John Collette to Ms. Moore occurred months before any plea offer, and she was not present when the attorney met with Moore regarding the plea offer. She never spoke with the attorneys again, although she asserts that she did attempt to contact them with no success. Be that as it may, the only information provided in Ms. Moore's affidavit regarding what the attorney said to Moore about his parole eligibility came from Moore himself. Thus, we find no error in the circuit court's determination that Ms. Moore had no "firsthand knowledge of any statements made by [Moore's] counsel concerning the length of time [Moore] would be required to serve." *See Kimble v. State,* 983 So. 2d 1069, 1074 (¶12) (Miss. Ct. App. 2008) (noting that since affidavits were "hearsay and contained no first[]hand knowledge of any fact," they "carried no weight").

¶21. "[T]o survive the UPCCRA's procedural bars, 'there must at least appear to be some basis for the truth of the claim' of a fundamental-constitutional-rights violation." *Ducksworth v. State*, 134 So. 3d 792, 795 (¶5) (Miss. Ct. App. 2013) (quoting *Stovall v. State,* 873 So. 2d 1056, 1058 (¶7) (Miss. Ct. App. 2004)). We find no such basis here and affirm the circuit court's dismissal of Moore's PCR motion.

¶22. **AFFIRMED.**

**GRIFFIS, P.J., FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND IRVING, P.J.**

**CARLTON, J., DISSENTING:**

¶23. I respectfully dissent from the majority's decision to affirm the circuit court's denial of Moore's PCR motion. I find that the record reflects that Moore presented sufficient evidence to warrant an evidentiary hearing on his motion; as a result, I would reverse the circuit court's judgment and remand this case for further proceedings consistent with this separate opinion.[10]

¶24. Moore appeals the Rankin County Circuit Court's summary dismissal of his March 8, 2016 PCR motion without an evidentiary hearing.[11] On appeal, Moore asserts the following: (1) the circuit court erroneously found his PCR motion was successive-writ barred; (2) his attorneys' incorrect parole-eligibility advice rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel; and (3) the circuit court erroneously denied his request for an evidentiary hearing.

¶25. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if it is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Thinnes v. State*, 196 So. 3d 204, 207-08 (¶10) (Miss. Ct. App. 2016) (quoting *Carson v. State*, 161 So. 3d 153, 155 (¶2) (Miss. Ct. App. 2014)).

---

[10] *See Readus v. State*, 837 So. 2d 209, 210 (¶2) (Miss. Ct App. 2003) (reversing the circuit court's summary dismissal of the movant's PCR motion and remanding for an evidentiary hearing on his allegations of an involuntary plea and ineffective assistance of counsel).

[11] The circuit court dismissed Moore's March 8, 2016 PCR motion without an evidentiary hearing after finding that the motion was procedurally barred and that the face of the motion reflected Moore was not entitled to any relief.

**I.** **Whether Moore's March 8, 2016 PCR motion is successive-writ barred.**

¶26. On appeal, Moore argues the circuit court erroneously dismissed his current PCR motion as successive-writ barred without holding an evidentiary hearing, and Moore claims relief is due because Robert Tubwell, a non-attorney, unlawfully prepared and filed the prior 2014 PCR motions without his permission. In his March 8, 2016 PCR motion, Moore contended the two prior 2014 motions "were not properly prepared or filed pursuant to the requirements of the Mississippi Uniform Postconviction Collateral Relief Act." The face of each 2014 motion also reflected ambiguity and irregularity in stating the motions were filed "by and through counsel" without identifying any attorney or Mississippi bar number. Moore further asserted in his March 8, 2016 PCR motion that Tubwell prepared and filed the 2014 motions and that he (Tubwell) engaged in the crime of the unauthorized practice of law as defined by Mississippi Code Annotated section 73-3-55 (Rev. 2012).

¶27. With regard to the unauthorized practice of law, section 73-3-55 provides:

> It shall be unlawful for any person to engage in the practice of law in this state who has not been licensed according to law. Any person violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished in accordance with the provisions of Section 97-23-43. Any person who shall for fee or reward or promise, directly or indirectly, write or dictate any paper or instrument of writing, to be filed in any cause or proceeding pending, or to be instituted in any court in this state, or give any counsel or advice therein . . . shall be held to be engaged in the practice of law.

¶28. In addition, the Mississippi Supreme Court has stated:

> The practice of law includes the drafting or selection of documents, the giving of advice in regard to them, and the using of an informed or trained discretion in the drafting of documents to meet the needs of the person being served. So

16

any exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession.

*Darby v. Miss. State Bd. of Bar Admissions*, 185 So. 2d 684, 687 (Miss. 1966) (citation omitted).

¶29. In the present case, Moore asserts that Tubwell clearly engaged in the unauthorized practice of law by taking the following actions: (1) accepting a fee from Moore's mother, Lisa; (2) advising Lisa of Moore's legal rights; and (3) writing and filing the two 2014 PCR motions on Moore's behalf without his knowledge or permission. In its judgment dismissing Moore's March 8, 2016 PCR motion, the circuit court issued no findings on Moore's prior PCR claims other than to state the prior motions rendered Moore's current PCR filing successive-writ barred. However, in the affidavit attached to his March 8, 2016 PCR motion, Moore averred that his mother, Lisa, mistakenly believed Tubwell was an attorney and paid Tubwell to file a motion on Moore's behalf. Moore further stated, "My mother later learned that Tubwell was not an attorney and that the Mississippi Bar Association was trying to stop him from trying to practice law." According to Moore, he "never met or spoke to" Tubwell and "did not ask or give permission to Tubwell to file [the two 2014 PCR] motions." Moore further averred in his affidavit that he only learned Tubwell had filed the two 2014 PCR motions after the circuit court dismissed them.

¶30. As further support for his claims, Moore attached an exhibit to his appellate brief that shows the DeSoto County Chancery Court enjoined Tubwell in 2014 from engaging in the unauthorized practice of law. Because the chancery court's order is not part of the record before this Court, Moore asks that this Court on appeal take judicial notice of the document.

17

In addition, in his appellate brief, Moore cites a prior opinion where the supreme court recognized Tubwell had engaged in the unauthorized practice of law. *See Miss. Bar v. Thompson*, 5 So. 3d 330, 338 (¶40) (Miss. 2008). *See also Tubwell v. Anderson*, 776 So. 2d 654, 656 (¶1) (Miss. 2000) (recognizing Tubwell's history as a "writwriter and . . . filer of frivolous lawsuits and appeals"). Based on his assertions that Tubwell engaged in the unauthorized practice of law and filed the two prior 2014 PCR motions without his permission, Moore asks this Court to find the 2014 motions are void and therefore pose no bar to his March 8, 2016 PCR motion.

¶31. In review of this issue, I acknowledge that section 73-3-55 establishes the practice of law without a license constitutes a crime in Mississippi. The record reflects that Moore presented evidence to support his claims, and the record reflects ambiguity on the face of each of the two motions filed in 2014. Moore's own affidavit avers that his mother hired Tubwell and that Tubwell, without a license to practice law, filed the two 2014 PCR motions without Moore's authorization. The circuit court held no evidentiary hearing and issued no findings as to the credibility of Moore's claims that he never authorized the 2014 PCR motions.[12]

¶32. After reviewing the record and applicable caselaw and statutory law, I find that Moore presented sufficient evidence to warrant a hearing on whether Tubwell filed the two prior 2014 PCR motions without Moore's authorization and, if so, whether the motions should

---

[12] *See* Miss. Const. art. 3, § 26 (discussing the right to self-representation); Miss. Code Ann. § 99-39-23(6) (discussing the successive-writ bar).

pose a procedural bar to Moore's instant March 8, 2016 PCR motion.[13] I would therefore reverse the circuit court's dismissal of Moore's March 8, 2016 PCR motion and remand for an evidentiary hearing to determine whether Moore's current PCR motion is procedurally barred. The record reflects Moore also asserts that his PCR motion is not successive-writ barred because his additional claims of involuntary guilty pleas and ineffective assistance of counsel demonstrate a violation of his fundamental constitutional right to due process. Because I find that the record shows that Moore also presented sufficient proof on these remaining claims to warrant an evidentiary hearing on them as well, I will briefly turn to a discussion of these two issues.

II.     **Whether Moore's attorneys provided incorrect parole-eligibility advice that rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel.**

¶33.    Moore additionally argues the circuit court erred in summarily dismissing his March 8, 2016 PCR motion as a successive writ because his motion raises a violation of his fundamental constitutional right to due process. Specifically, Moore contends that his attorneys provided incorrect parole-eligibility advice that induced his guilty pleas and amounted to ineffective assistance of counsel. In addressing a similar situation in *Sylvester v. State*, 113 So. 3d 618, 621-22 (¶¶9-10) (Miss. Ct. App. 2013), this Court acknowledged:

> The trial court may summarily dismiss a motion for postconviction relief if it plainly appears from the face of the motion, any annexed exhibits[,] and the prior proceedings in the case that the movant is not entitled to any relief. When the only support the defendant offers is his own affidavit, and it is

---

[13] To warrant an evidentiary hearing, Moore must support his claims with at least a preponderance of the evidence. *See James v. State*, 220 So. 3d 989, 991 (¶5) (Miss. Ct. App. 2016).

contradicted by unimpeachable documents in the record, the supreme court has held that an evidentiary hearing is not required.

However, when the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing. This Court has held that an attack on a facially correct plea may survive summary dismissal if supporting affidavits of other persons are attached.

*Id.* (internal citations and quotation marks omitted).

¶34. As in both *Sylvester* and *Readus*, Moore attached affidavits to his current PCR motion to support his claims. In addition to his own affidavit, Moore attached an affidavit from his mother, Lisa. Thus, in applying precedent to the instant case, this Court on appeal must determine "whether [Moore's] motion and [the supporting] affidavit[s] were sufficient evidence such that his allegations were not overwhelmingly belied by the plea-hearing transcript." *Sylvester*, 113 So. 3d at 622 (¶11). I therefore turn to a review of Moore's claims regarding his guilty pleas and ineffective assistance to discuss whether he provided sufficient evidence to warrant an evidentiary hearing on these issues.

### a. Involuntary Guilty Pleas

¶35. As previously stated, Moore argues his reliance on his attorneys' incorrect parole-eligibility advice rendered his guilty pleas involuntary. In recently discussing another PCR movant's similar claim, this Court explained:

A voluntary guilty plea emanates from the defendant's informed consent. An allegation that the defendant pled guilty in response to counsel's mistaken advice may vitiate the plea, because it indicates the defendant may not have been fully aware of the consequences of the plea. The petitioner bears the burden of proving by a preponderance of the evidence that his plea was involuntarily entered.

This Court has previously stated:

20

A guilty plea is binding on a defendant only if it is entered voluntarily and intelligently. A plea is considered voluntary and intelligent only if the defendant is informed of the nature of the charge against him and the consequences of the plea. Before the trial court may accept a guilty plea, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. As part of its voluntariness inquiry, the court must determine whether the accused understands the minimum and maximum sentences for the charge.

We have further stated:

It is not a prerequisite to a voluntary plea that the defendant understand the nature of parole, his eligibility for parole, and the circumstances under which it may be granted. On the other hand, a plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on the misinformation.

In *Sylvester*, this Court found that the defendant's eligibility for trusty earned time was analogous to eligibility for parole. Th[is] Court further found that, if a defendant alleges he was given erroneous advice by his attorney as to his eligibility for trusty earned time (or for parole) and that erroneous advice goes uncorrected, and he provides evidence other than his own statement (such as a sworn affidavit from a third party), he is entitled to an evidentiary hearing.

*Thinnes v. State*, 196 So. 3d 204, 208-09 (¶¶15-18) (Miss. Ct. App. 2016) (internal citations and quotation marks omitted).[14]

¶36. In his affidavit attached to his PCR motion, Moore said he rejected the State's first plea offer for thirty-five years. Moore's affidavit further provided that he initially rejected a fifty-year plea deal until one of his attorneys informed him that he would be parole eligible

---

[14] *See also Fairley v. State*, 834 So. 2d 704, 707 (¶8) (Miss. 2003) ("The rule arising . . . is that failure to mention something concerning parole eligibility may be no problem, but erroneous information concerning parole and sentencing at least entitles the petitioner to an evidentiary hearing on whether he relied on the erroneous information.").

21

after serving about five years. According to Moore's affidavit, his attorney told him he must serve one-fourth of his sentence (about twelve and a half years) but that he could reduce his time until parole eligibility to about five years through trusty time and meritorious earned time.

¶37. Significantly, Moore also attached to his PCR motion an affidavit from his mother, Lisa, who stated that one of her son's attorneys "mentioned something [to her] about [Moore] having to serve six (6) years, and he mentioned something about forty percent (40%)[.]" Lisa further stated that, following her son's guilty plea, Moore called her and said his attorneys had explained that, "if he accepted the [fifty-]year plea deal and ple[d] guilty, then [he] would serve [twelve and a half] years minus [six] years for good time minus about one year for meritorious earned time, making [him] eligible for parole in about [five] years." Lisa also stated Moore informed her that he initially refused the fifty-year plea deal until his attorneys advised him that he would only have to serve five years before becoming eligible for parole.

¶38. Similarly to the present case, in *Readus v. State*, 837 So. 2d 209, 211 (¶4) (Miss. Ct. App. 2003), the movant attached his own affidavit and one from his mother to support his claims that his attorney's incorrect sentencing advice rendered his guilty pleas involuntary and amounted to ineffective assistance of counsel. In his own affidavit, Readus averred "his attorney told him that, if he pled guilty, he would be sentenced to 'six months and ten years on paper' and that he would 'get RID.'" *Id.* at 212 (¶9). "Readus'[s] mother's affidavit averred that she first spoke with the attorney the morning of the sentencing hearing in anticipation of her testimony . . . [and] that the attorney told her that Readus 'would get about

22

six years and he said something about papers after that.'" *Id.* at 211 (¶5). Although acknowledging a discrepancy existed in the affidavits as to the exact sentence length the attorney promised Readus, this Court found that the difference failed to invalidate the entirety of the affidavits. *Id.* at 214 (¶14). Instead, the *Readus* Court concluded that Readus's supporting affidavits corroborated that his attorney provided incorrect advice and "instilled an expectation of a far more lenient sentence than Readus actually received." *Id.* We further determined in *Readus* that "[c]ounsel's alleged deficiency was not 'cured' by the plea colloquy because the erroneous advice was not directly contradicted by the [trial] court's questioning." *Id.* at 214-15 (¶18) (citation omitted). As acknowledged, in the present case, the corroboration Moore's mother offered in her affidavit of incorrect legal advice constitutes similar corroboration to that offered by the mother's affidavit in *Readus*.

¶39.    Also as in *Readus*, Moore contends that the circuit court failed during the plea hearing to correct his attorney's erroneous parole-eligibility advice. Indeed, the record reflects that, although the circuit court informed Moore of the rights he waived and the minimum and maximum penalties applicable if he pled guilty, the circuit court never addressed the issue of Moore's parole eligibility. As a result, during the plea colloquy, the circuit court failed to correct the misinformation that Moore's supporting affidavits allege his attorneys provided as to his parole eligibility. In the analogous case of *Readus*, this Court found that the movant raised sufficient evidence to warrant an evidentiary hearing. *Id.* at 210 (¶2).[15] Accordingly,

---

[15] *See also James v. State*, 220 So. 3d 989, 991 (¶5) (Miss. Ct. App. 2016) ("At an evidentiary hearing on [a PCR motion], the burden of proof is on the petitioner to 'prove by a preponderance of the evidence that he is entitled to the relief'" (quoting Miss. Code Ann. § 99-39-23(7) (Rev. 2015))).

I likewise find Moore is entitled to an evidentiary hearing on this issue and that the circuit court abused its discretion by summarily dismissing his PCR motion without granting the hearing.

### b.     Ineffective Assistance of Counsel

¶40.    During his plea hearing, Moore swore under oath he was satisfied with his attorneys' representation. "[A] strong presumption . . . exists that in-court declarations are truthful." *Thinnes*, 196 So. 3d at 210 (¶25) (citing *Sylvester*, 113 So. 3d at (¶24)). On appeal, however, Moore argues his attorney provided ineffective assistance of counsel. To prevail on his ineffective-assistance claim, Moore must prove: (1) his attorneys' performance was deficient; and (2) he suffered prejudice as a result of the deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). With regard to a *Strickland* analysis, this Court has explained, "[I]t is presumed that counsel's representation falls within the range of reasonable professional assistance. However, the defendant may overcome the presumption. To do so, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Sylvester*, 113 So. 3d at 624 (¶22) (internal citation and quotation marks omitted).

¶41.    The affidavits Moore attached to his March 8, 2016 PCR motion support his assertions that (1) his attorneys misinformed him about his parole eligibility; (2) he detrimentally relied on this erroneous information in pleading guilty; and (3) but for his attorneys' erroneous parole-eligibility advice, he would not have decided to accept the State's fifty-year plea offer and plead guilty. Thus, if Moore's instant PCR motion is not found to be procedurally barred

as a successive writ due to the unauthorized and illegal actions of an unlicensed writ writer, then Moore's affidavits provide sufficient corroborating evidence to warrant an evidentiary hearing as to his ineffective-assistance-of-counsel claim. *Compare Readus*, 837 So. 2d at 214-15 (¶18).

¶42. I would therefore reverse the circuit court's summary dismissal of Moore's March 8, 2016 PCR motion and remand this case for an evidentiary hearing on the claims raised by Moore's PCR motion. As a result, I respectfully dissent from the majority's decision.

**LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.**